## SPRING CANYON COAL CO. et al. v. INDUSTRIAL COMMISSION OF UTAH.

No. 3843. Decided September 26, 1922. Petition for Rehearing Dismissed by Stipulation of Parties, December 1, 1922. (210 Pac. 611.)

1. APPEAL AND ERROR—"LAW OF CASE" DOCTRINE HELD INAPPLICABLE IN WORKMEN'S COMPENSATION CASE. A ruling of the Supreme Court, on appeal from an award of the Industrial Commission, that compensation for temporary disability in addition to compensation for loss of a leg could not be allowed, is not the law of the case on appeal from a second award of compensation for temporary total disability, where the findings and conclusions of the Industrial Commission were materially different and state the facts in much greater detail (citing Words and Phrases, First Series, Law of Case).[1]

2. MASTER AND SERVANT—ADDITIONAL COMPENSATION FOR DISABILITY NOT ALLOWABLE DURING COMPENSATION PERIOD ALLOWED FOR LOSS

---

[1] *Chadwick v. Beneficial Life Ins. Co.*, 56 Utah, 480, 191 Pac. 244.

OF MEMBER.  Under Comp. Laws 1917, §§ 3137, 3138, additional compensation for temporary total disability cannot be allowed during the same period for which compensation was allowed for the loss of a leg.

3. MASTER AND SERVANT—ADDITIONAL COMPENSATION FOR TOTAL DISABILITY HELD ALLOWABLE AFTER PERIOD OF COMPENSATION FOR LOSS OF MEMBER.  Under Comp. Laws 1917, § 3137, allowing compensation for temporary disability, and section 3138, providing that for the loss of a leg at or above the knee, where a stump remains sufficient to permit the use of an artificial limb, compensation of $12 a week for 150 weeks may be allowed, and additional compensation for temporary total disability may be allowed after the 150-week period, where complications have resulted and the stump is not sufficient to permit 'the use of an artificial limb, and two other amputations are necessary.

Action by the Spring Canyon Coal Company, employer, and another against the Industrial Commission of Utah, to review its award of compensation under the Industrial Act in favor of Irvin Wimber, employé.

AWARD SET ASIDE in part, and AFFIRMED in part.

*De Vine, Howell, Stine & Gwilliam,* of Ogden, for plaintiffs.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendant.

THURMAN, J.

This is a proceeding under the Utah Industrial Act (Comp. Laws 1917, §§ 3061-3165) to review the findings and award of the defendant Commission in the matter of the claim of one Irvin Wimber for compensation.

In the proceedings before the Commission the parties stipulated the following, which the Commission adopted as its findings of fact:

"It is hereby stipulated between Irvin Wimber, applicant, and Spring Canyon Coal Company and Ætna Life Insurance Company,

defendants, that Irvin Wimber was injured on October 8, 1918, by
reason of an accident arising out of and in the course of his em-
ployment with the Spring Canyon Coal Company; that the Ætna
Life Insurance Company was the insurance carrier of the Spring
Canyon Coal Company at the said time; that Irvin Wimber at said
time was earning $33.30 per week, working seven days per week;
that on the 10th day of October, 1918, Irvin Wimber suffered am-
putation of his left leg at a point just below the kneejoint; that
thereafter, on March 6, 1919, another operation was performed,
which consisted of the scraping of the end of the bone and remov-
ing the infected portions thereof at a point still below the knee;
that thereafter, during the month of September, 1919, two separate
operations were performed on said leg, during the course of which
it was amputated at a point approximately two inches above the
kneejoint, said operations being necessitated by reason of the in-
fected condition of the bone of the leg and the surrounding tissues;
that Irvin Wimber suffered temporary total disability from October
19, 1918, to and including November 15, 1919, a period of 56 weeks
and 1 day; that at said time his leg appeared to be healed over, and
there was no discharge therefrom; that immediately thereafter an
artificial limb was fitted to said leg, and was worn by the applicant
for a period of approximately 5 months; that during said period
the leg would swell considerably after the applicant walked upon
it using the artificial limb, presumably on account of the lack of
sufficient cushion of flesh on the end of the bone; that Irvin Wim-
ber performed no work from November 15, 1919, to June 1, 1920;
that from June 1, 1920, the applicant has been employed by the
Spring Canyon Coal Company and walking on said limb by means
of the artificial leg, but being required to lay off work an average
of two days every week until March 1, 1921; that during said
period Irvin Wimber was employed as a blacksmith helper, moving
about freely on said artificial limb, and that during said time there
was more or less constant pain in said leg, which, however, did not
necessitate Irvin Wimber laying off work, except as above stated;
that on March 1, 1921, the end of said leg began to discharge, and
appeared to be infected at the point of the old scar; that Irvin
Wimber was required to cease work from March 1, until on or about
April 22, 1921; that during said period Dr. M. J. Seidner washed
and dressed the leg every day; that on April 22, 1921, the leg
appeared to be healed over, and there was no discharge therefrom;
that on or about April 23, 1921, Irvin Wimber commenced working
for the Spring Canyon Coal Company as blacksmith's helper, and
continued working until January 1, 1922; that between April 23,
1921, and January 1, 1922, he was off about two-thirds of the time
on account of the condition of the leg; that on January 1, 1922, said
leg commenced to discharge, and caused great pain; that from

January 1, 1922, until March 1, 1922, Irvin Wimber worked half time; that on March 1, 1922, said leg was discharging more freely, and caused Irvin Wimber to leave work entirely, and that he has been totally disabled from March 1, 1922, until this time; that on the 3d day of April, 1922, said Irvin Wimber was examined by Dr. S. C. Baldwin of Salt Lake City, and an X-ray picture taken at said time shows that there is an enlargement over the end of the bone at the point of amputation, and there are also some ostephytes which have grown out, and which will make the end of the stump very tender; there is also a small discharging point in the old scar, which means that the old scar will have to be dissected out and the bone reamputated in order to give him a good stump for an artificial limb; that the leg at this time is amputated at a point about two inches above the kneejoint; that it is now proposed to amputate two or three inches more from the leg, which will make the point of amputation about halfway between the kneejoint and the hip joint, and will, in the absence of unexpected complications, leave a stump sufficient to permit the use of an artificial limb; that as a result of the operation which is now proposed, Irvin Wimber will suffer temporary total disability, in addition to the disability heretofore suffered; that Irvin Wimber has not to his knowledge suffered any injury or accident since the original injury, suffered October 8, 1918, and the present condition of the leg is presumably due to the original accident and to the use of the leg with artificial limb, in his employment since that time.

"That in accordance with the award of the Industrial Commission of Utah and the decision of the Supreme Court of the state of Utah, the Ætna Life Insurance Company has heretofore paid to said Irvin Wimber 150 weeks' compensation at the rate of $12 per week, on account of the loss of the leg at or above the knee, where a stump remains sufficient to permit an artificial limb to be used.

"It is further agreed that the Industrial Commission of Utah may make its findings and award upon the stipulations of fact herein set forth.

"There is not involved in this case any question of injury to any other member or any other part of Irvin Wimber's body, other than the injury to his left leg as described."

The Commission found as conclusions that from the date of the first amputation of the limb in October, 1918, down through different periods of time to and including February 28, 1922, applicant had been totally disabled for work 184 weeks and 3 days for which he was entitled to compensation at the rate of $12 per week. It was ordered by the Commission that payments accrued at the date of the order should be

paid in a lump sum, payments to continue as provided in the Industrial Act.

It will be noted that the above award does not include compensation for loss of the leg as provided in Comp. Laws 1917, § 3138. Claim for such loss has heretofore been adjudicated by the Commission, and an award of compensation made, and affirmed by this court. *Spring Canyon Coal Co.* v. *Ind. Com.,* 57 Utah, 208, 193 Pac. 821. In that case the Commission also allowed compensation for temporary total disability from October, 1918, to and including November 15, 1919, at the rate of $12 per week, but that portion of the award was not affirmed. As we viewed the case, as then presented, the award of compensation for temporary total disability, in addition to compensation for the loss of the limb, was without authority of law.

Plaintiffs contend that that decision is the "law of the case," and that this court is peremptorily bound thereby. If the doctrine of the "law of the case" can be successfully invoked, plaintiffs are entitled to prevail, regardless of any other question involved.

The material findings and conclusions of the Commission upon which the first award was made are as follows:

"On October 8, 1918, Irvin Wimber, who was employed by the Spring Canyon Coal Company, suffered a compound fracture of the left leg through the ankle joint in a collision between two motor cars, in which he was thrown under one of them, and as a result of this injury, his left leg was amputated at the kneejoint. There is no question but that the accident arose out of and in the course of his employment. He at the time was earning $33.30 per week, working 7 days per week.

"In addition to the above facts, the Commission finds that there followed a period of temporary disability to and including November 15, 1919. Medical expenses in the sum of $200 has been paid by the defendants, who have also paid compensation at the rate of $12 per week from the date of the accident to and including April 27, 1920. It is apparently conceded that the Commission should award compensation to cover the loss of the leg as provided by law, but it is contended by the defendants that no additional award should be made to cover the period of disability.

"The Commission is of the opinion that our statutes, properly construed, mean that in a case of this kind the award should cover

the period of disability, and in addition thereto the number of weeks' compensation provided by the statutes for the loss of a member. Holding such an opinion, the Commission concludes that compensation should be here awarded to cover the disability period from the 11th day after the accident to and including the 15th day of November, 1919, and in addition thereto 150 weeks' compensation for the loss of the left leg, and that the payments already made should be credited on this award."

In comparing the two sets of findings with the view of determining whether or not the issues and facts in support thereof are substantially the same, we find in the instant case much greater detail in stating the nature and cause of the disability for which compensation is sought, and also find that the disability covers a longer period of time. The findings in the former case do not show an abnormal or unusual condition of the limb during the period of disability. They indicate nothing as to infection and other adverse conditions arising from an attempt to use the artificial limb, but, on the contrary, assume that when the artificial limb was supplied the period of total disability ceased.

The findings as the case is now presented to the court show, not only that the period of disability did not cease when the artificial limb was supplied, but also that the attempt to use the artificial limb in the present condition of the stump of the leg is rendered entirely abortive. Not only is there a wide difference between the conditions shown by the different findings, but a casual reading of the opinion of the court in the former case will demonstrate that the court understood the case to be entirely different from the case now presented. On page 214 of 57 Utah, on 'page 823 of 193 Pac., the opinion reads:

'The facts in the present case are singularly free from complication. It does not appear that there was any injury or disability whatever resulting from the accident *except the loss of the leg.* No other member of the body was affected, and the temporary total disability for which applicant was awarded additional compensation resulted *entirely from the loss of the leg* and continued *until he was supplied with an artificial limb.*" (Italics supplied.)

The language above quoted is wholly inadequate to describe the condition as it is now presented to the court.

We are satisfied that the doctrine—the "law of the case"—should not be applied to the case at bar. *Chadwick* v. *Beneficial Life Ins. Co.*, 56 Utah, 480, 191 Pac. at page 244; Words and Phrases, First Series, p. 4024.

This brings us to a consideration of the principal question to be determined. Defendant does not challenge the validity of our opinion as applied to the facts then presented to the court, but it earnestly contends that, where abnormal, unusual, and unexpected conditions develop in connection with the loss of a member, as in the instant case, it was not the intention of the Legislature that the compensation awarded should be limited entirely to that allowed for the mere loss of the member, but that in such case compensation should be allowed for temporary total disability. This contention is challenged by the plaintiffs, who vigorously contend that, where compensation is allowed for the loss of a member, compensation for temporary total disability cannot be allowed, unless the disability is due to an injury to some other member of the body.

Before proceeding to determine this question one important feature of the case may well be disposed of at this stage of our opinion. The Commission awarded the applicant compensation for 184 weeks and 3 days for temporary total disability at the rate of $12 per week. For 150 weeks during this period of time the applicant has already been allowed and paid $12 per week as compensation for the loss of his leg. Under no possible interpretation of the statute, as we understand it, can additional compensation be allowed during the same period of time. Under the award as made the compensation would amount to $24 per week for 150 weeks, while the greatest sum allowed by the statute at the time of the accident for an injury, including the period of disability (except permanent total disability), was $12 per week for a stated period. The provisions of the statute covering this case are found in Comp. Laws 1917, §§ 3137, 3138. These sections, as far as material here, read as follows:

3137. "In case of temporary disability, the employee shall receive 55 per cent. of his average weekly wages so long as such

disability is total, not to exceed a maximum of $12 per week, and not less than a minimum of $7 per week; but in no case to continue for more than six years from the date of the injury, or to exceed $4,500.

3138. "* * * In the case of the following injuries the compensation shall be 55 per cent of the average weekly wages, but not more than $12 to be paid weekly for the periods stated against such injuries respectively, to wit: For loss of: * * * One leg at or above the knee where stump remains sufficient to permit the use of an artificial limb 150 weeks."

Having arrived at the conclusion that $12 per week for a stated period of time is the greatest sum that can be paid during such period under the above statute for any injury, including the disability incident thereto, and having found that the applicant in this case has already received $12 per week for 150 weeks as compensation for the loss of his leg, it remains to be determined, whether or not he is entitled to receive compensation for total temporary disability during the remainder of the period awarded by the Commission, to wit, for the period of 34 weeks and 3 days. This involves the necessity of again interpreting the statute but under a new and different state of facts.

For the loss of one leg at or above the knee where the stump remains sufficient to *permit the use of an artificial limb the statute* allows $12 per week for 150 weeks.

As the facts now appear it is almost an open question whether the stump of applicant's leg is sufficient to permit of the use of an artificial limb at all. After a lapse of more than three years from the date of the accident and the first amputation of the leg, during which time a second amputation has been made reducing the stump, besides other operations and treatment from time to time, the Commission, acting under the advice of medical experts, find that another amputation of the leg will be necessary before an artificial limb can be used. The Commission, however, qualify this finding by suggesting that the proposed amputation will leave a stump sufficient "in the absence of unexpected complications." There have already been so many unexpected complications in this case that the Commission evidently deemed it prudent to qualify its findings as to what the future might develop.

When the Legislature fixed the compensation for the loss of a leg, under the statute above quoted, and limited the period within which compensation should be paid to 150 weeks, it certainly contemplated *that an artificial limb could be used.* It contemplated that the loss of the leg would occur under such conditions that it might be greatly minimized by the use of an artificial limb.

In the case at bar, under the findings of the Commission, it has not yet been definitely determined that an artificial limb can be used. The applicant is suffering from the handicap of total disability—whether temporary or permanent remains to be seen. In the meantime he has drawn and probably used all of the compensation heretofore allowed for the loss of his leg while his total disability still continues. Certainly the Legislature did not contemplate a condition of this kind when it limited the period of compensation to 150 weeks.

But it is contended by plaintiffs that this case comes within the doctrine of our former decision, even if the "law of the case" does not apply. We think not. In that case, at page 213 of 57 Utah, at page 823 of 193 Pac., after quoting the language of section 3138, which we have likewise quoted above, the court says:

"We are constrained to hold that the language last quoted is mandatory in both form and substance, that it definitely fixes the compensation to be paid for *the loss of specific members of the body,* and that the compensation thus fixed is exclusive of any other compensation for disability arising *solely* from the loss of the particular member in question. If there should be other members injured in the same accident, *or other injuries resulting,* causing disability, *that would present an entirely different question,* and one which we will not undertake to determine in the case at bar." (Italics supplied.)

There is no question under the findings of the present case but that *other injuries* have resulted than the mere loss of the leg. If the loss of the leg had been the only injury, that condition, after a normal lapse of time which must have been within the contemplation of the Legislature, could have been, at least partially, alleviated by means of an artificial limb. But the unusual, unexpected, and abnormal conditions re-

sulting in a prolonged period of disability in the instant case, in the opinion of the court, constitute an injury separate and apart from the mere loss of the limb and the normal period of disability, and entitles the applicant to additional compensation.

Comp. Laws Utah 1917, § 3144, confers upon the Commission continuing jurisdiction in cases arising under the Industrial Act. The section reads:

'The powers and jurisdiction of the Commission over each case shall be continuing, and it may from time to time make such modification or change with respect to former findings or orders with respect thereto as in its opinion may be justified."

It is perhaps unnecessary to state that in order to invoke the jurisdiction of the Commission, under the section just quoted, due notice should be given to necessary parties, which notice should state the object of the proceeding, together with the nature and character of the relief sought. In the case at bar the record shows the parties expressly waived notice, appeared before the Commission, stipulated the facts, and requested the Commission to hear and determine the cause. The Commission thereby acquired jurisdiction. We are of opinion that this is a proper case for the exercise of jurisdiction by the Commission for the purpose of making lawful changes and modifications of the former findings and award.

Counsel for the respective parties have cited numerous cases arising under statutes sometimes differing widely and sometimes closely analogous to our own. The cases, however, are not sufficiently helpful to justify a review in the body of this opinion.

For the reasons heretofore stated the award of the Commission, allowing compensation for total disability during the period when applicant was receiving compensation for the loss of his leg, is vacated and set aside. The portion of the award allowing compensation for 34 weeks and 3 days, payable in a lump sum to date, payments to continue as provided in the Industrial Act, is affirmed.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.