## BRODERICK v. INDUSTRIAL COMMISSION et al.

No. 4090.   Decided March 17, 1924.   (224 Pac. 876.)

1. MASTER AND SERVANT—COURT MAY NOT INTERFERE WITH AWARD OF COMPENSATION FOR DISFIGUREMENT OR LOSS OF BODILY FUNCTION NOT OTHERWISE PROVIDED FOR. If the Industrial Commission considers evidence respecting an alleged disfigurement or loss of bodily function not otherwise provided for, within the meaning of Workmen's Compensation Act (Comp. Laws 1917, § 3138, as amended by Laws 1919, c. 63), and makes an allowance in accordance with its best judgment, pursuant to section 3138, the appellate court cannot interfere with its award.

2. MASTER AND SERVANT—COMPENSATION FOR PARTIAL LOSS OF USE OF LEG HELD PROPER. Where the Industrial Commission found the loss of function or loss of use of employee's right leg below knee to be approximately 25 per cent. as compared with a total loss, an award of weekly payments for 35 weeks, being one-fourth the number of weeks during which he would be entitled to compensation under Comp. Laws 1917, § 3138, as amended by Laws 1919, c. 63, for a total loss of such leg below the knee, without considering whether that disability affected the employee to a greater extent in pursuing his regular vocation as a coal miner than in pursuing some other manual occupation, held proper, in view of section 3142 before its amendment by Laws 1921, c. 67, and section 3137, as amended by Laws 1919, c. 63.[1]

3. MASTER AND SERVANT—RULES AS TO MEASURE OF DAMAGES INAPPLICABLE IN COMPENSATION CASE. A proceeding before the Industrial Commission under Workmen's Compensation Act is not an action for damages, and hence rules as to the measure of damages do not apply.

Original proceedings in the Supreme Court to review an award under the Workmen's Compensation Act by the Industrial Commission on a claim for additional compensation, by Lorenzo Broderick, claimant, opposed by the Lion Coal Company, employer, and Ocean Accident & Guarantee Corporation, Limited, insurance carrier.

AFFIRMED.

Certiorari

*Willard Hanson* and *A. H. Hougaard,* both of Salt Lake City, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* of Salt Lake City, for defendants Commission and Coal Company.

*J. H. Wolfe,* of Salt Lake City, for defendant Ocean Accident & Guarantee Corporation, Limited.

---

[1] *Spring Canyon Coal Co.* v. *Ind. Com.,* 57 Utah, 208, 193 Pac. 821.

FRICK, J.

The plaintiff made due and timely application to the Industrial Commission of Utah, hereinafter called Commission, for compensation for an injury sustained by him in July, 1920, in the course of his employment while employed by the defendant Lion Coal Company, which is an employer coming within the provisions of our Workmen's Compensation Act, commonly known as the Industrial Act. The other defendant, the Ocean Accident & Guarantee Corporation, is the insurance carrier for the coal company.

Compensation was duly awarded plaintiff for all temporary disability and for loss of time, concerning which there is no controversy.

A considerable time after plaintiff had recovered from his temporary disability, and after he had returned to work and had followed his employment for some time, to wit, in July, 1923, he made further application to the Commission for an allowance for permanent disability, to wit, for the loss of the use or for loss of function of his right leg below the knee, which was the point of the original injury and for which injury compensation had been awarded him as before stated.

The Commission reopened the case, and a rehearing was duly had, at the conclusion of which the Commission made an additional award to the plaintiff. Neither side, it seems, was satisfied with the last award made by the Commission, and both the plaintiff and the two defendants filed applica-

tions for rehearing which was granted. When those applica-
tions came on for hearing, a member of the Commission, Mr.
Knerr, stated the issue thus:

"The only issue before the Commission under those petitions
for rehearing is the question of loss of function to the applicant's
right leg between the knee and the ankle as all other questions
pertaining to the accident were determined at the former hearing.
* * * We are attempting to find the extent of lost function to the
applicant's right leg."

All parties, it seems, concurred in Mr. Knerr's statement,
and the rehearing was limited to the issue stated by him.
Upon the conclusion of the rehearing at which a number of
medical and surgical experts testified, the commissioners dis-
agreed upon the question of the extent of plaintiff's loss of
use or loss of function of his right leg below the knee. The
majority of the Commission, after fully stating the history
of the case, and after reviewing the expert medical testimony
respecting the extent of the loss of use or loss of function of
plaintiff's leg, stated their conclusion in the following words:

"There is some divergence of opinion among the medical men
who have testified in this case as to the disability which this man
suffers to the right leg below the knee as a result of his injury of
July 23, 1920, some of them making estimates as low as 15 per
cent., while one places the disability as high as 50 per cent. A
careful review of the testimony taken, which reveals that the appli-
cant has for a long period of time sustained effort in the most
fatiguing employments, that he has been the beneficiary of large
earnings from said employments, that the physical condition of his
right leg below the knee has improved considerably since his
examination to determine lost function, on April 13, 1923, together
with the fact that the Commission has made personal observation
of his condition by watching physical examinations and having the
opportunity of seeing him move about upon his injured member
upon various occasions, leads the Commission to conclude:

"That under our law (section 3138) the occupation factor cannot
be taken into consideration when fixing the percentage of disability
for either partial or total loss of function to a member, as set out
in the schedule, and for which a specific compensation is provided
therein; and that applicant has lost approximately 25 per cent. of
the use of the right leg below the knee; and that, therefore, the
Lion Coal Company or the Ocean Accident & Guarantee Corpora-
tion should pay to the applicant 35 weeks' compensation at $16 per

week, representing 25 per cent. of loss of bodily function to the right leg below the knee."

Plaintiff, in his brief, states the contention as follows:

"It is the contention of the plaintiff herein that the majority members of the Commission erred, as matter of law, in deciding that the occupation factor cannot be taken into consideration when fixing the degree of disability and loss of bodily function sustained by the applicant."

It is contended that in view that the testimony of the medical experts discloses that the permanent partial disability of plaintiff's leg affected him to a greater extent in pursuing the occupation of coal miner than it would in some other manual occupation, and in view that coal mining was his vocation at the time of his injury and that the evidence showed that he could earn higher wages as a coal miner than he could in some other manual occupation for which he was adapted, therefore it was the duty of the Commission, in determining the extent of plaintiff's permanent partial loss of use or loss of function that he sustained in his right leg, to take into consideration the vocation that he followed at the time of the injury and the effect that the loss of function of his leg would have in that particular vocation, rather than the effect that such loss of function would have upon plaintiff's leg regardless of his vocation. In other words, counsel contend that if the loss of plaintiff's right leg affected him to a greater extent in following the vocation of a coal miner, than it would as a common laborer or in following some other manual occupation, the extent of the loss of function should be controlled by his vocation as a coal miner and not otherwise.

In view of this contention, it will be necessary to refer to our statute and to have recourse to the decisions of courts which are based upon statutes in effect or in substance like ours. Our statute relating to the amounts of compensation to be awarded to injured employees is found in Comp. Laws Utah 1917, §§ 3137 and 3138, as amended by Chapter 63, Laws Utah 1919, which read as follows:

3137. "In case of temporary disability, the employee shall receive 60 per cent. of his average weekly wages so long as such disability is total, not to exceed a maximum of $16.00 per week, and not less

than a minimum of $7.00 per week; but in no case to continue for more than six years from the date of the injury, or to exceed $5,000.00.

3138. "Where the injury causes partial disability for work, the employee shall receive, during such disability and for a period of not to exceed six years beginning on the fourth day of disability, a weekly compensation equal to 60 per cent. of the difference between his average wages before the accident and the weekly wages he is able to earn, thereafter, but not more than $16.00 a week. In no case shall the weekly payments continue after the disability ends, or death of the injured person, and in case the partial disability begins after a period of total disability the period of total disability shall be deducted from such total period of compensation. In the case of the following injuries the compensation shall be 60 per cent. of the average weekly wages, but not more than $16.00 to be paid weekly for the periods stated against such injuries respectively, and shall be in addition to the compensation hereinbefore provided for temporary total disability, to wit."

Then follows a statement of the number of weeks that shall be allowed for specific injuries, among which are the following:

"For loss of one leg at or so near the hip joint so as to preclude the use of an articial limb, 180 weeks; one leg at or above the knee where stump remains sufficient to permit the use of an artificial limb, 150 weeks; one leg between the knee and ankle, 140 weeks."

After enumerating a large number of specific injuries, the section concludes as follows:

"Any other disfigurement, or the loss of bodily function not otherwise provided for herein, such period of compensation as the Commission shall deem equitable and in proportion to compensation in other cases not exceeding two hundred weeks.

"The amounts specified in this section are all subject to the limitation as to the maximum weekly amount payable as hereinbefore specified in this section, and in no event shall more than a total of $5,000.00 be required to be paid."

Section 3139 relates to cases of permanent total disabilities and is not material here. Section 3142, as in force when plaintiff's injury occurred, reads as follows:

"The average weekly wage of the injured person at the time of the injury shall be taken as the basis upon which to compute the benefits."

The foregoing section was later amended.   See Laws Utah 1921, c 67.   The amendment, however, was after the injury in this case occurred.

We have quoted the different sections of our statute for the purpose of showing the theory our Legislature pursued in fixing the amounts of compensation that should be allowed for specific injuries and to what extent discretion is vested in the Commission in awarding compensation under certain circumstances.   It will be observed that the earnings or earning capacity of the injured employee is important only in case that 60 per cent. of his average weekly wage amounts to less than $16 per week.   In case 60 per cent. of his average weekly wage is equal to or exceeds $16, the amount of his earnings is of no importance whatever.   Sixteen dollars per week, therefore, is the highest amount any injured employe can be awarded, although 60 per cent. of his average weekly wage is much more than that amount.   The limit of $16 is an arbitrary one, and so is the limit of 60 per cent. The same is true respecting the different amounts that are allowed for the specific injuries that are enumerated in section 3138, supra.   In some states, notably in the state of Washington (*Foster* v. *Ind. Ins. Com.*, 107 Wash. 400, 181 Pac. 912), the statute fixes specific amounts that are to be allowed for specific injuries instead of weekly allowances as is the case in this state.   It will also be observed that our statute provides that in case of "any other disfigurement, or the loss of bodily function not otherwise provided for," the Commission is vested with some discretion and for such an injury it may allow such period of compensation as the Commission "shall deem equitable and in proportion to compensation in other cases not exceeding two hundred weeks." Here again we have an arbitrary limit of 200 weeks.   Moreover, the compensation allowed must be "in proportion to compensation in other cases."   In many of the statutes, as is the case in the Washington statute, no discretion whatever is vested in the Commission in making allowances for loss of bodily function.   For example: If an injured employee loses a leg below the knee and above the ankle, he would be allowed a specific sum for the loss.   In case, how-

ever, he received an injury to his leg below the knee and
above the ankle joint, which would result in the loss of func-
tion of the leg to the extent of 25 per cent., his allowance
for such a loss would be an amount equal to one-fourth, or
25 per cent., of the amount that he would receive for the
entire loss of his leg between the knee and ankle joint. In
neither event would the Commission have any discretion in
the matter, but would be compelled to award the amount
fixed by the statute. Under our statute, however, in cases
where there is a "disfigurement or loss of bodily function"
which is not otherwise provided for, the Commission may
allow such compensation as may be equitable; but it must,
nevertheless, be "in proportion to compensation in other
cases," and cannot exceed 200 weeks. In the instant case
the Commission found the loss of function of plaintiff's right
leg to be "approximately twenty-five per cent. of the use
of the right leg below the knee," and then awarded him $16
a week for a period of 35 weeks. In case the plaintiff had
lost his right leg below the knee and thus had been totally de-
prived of its use, then under the statute, he would have
been awarded compensation for 140 weeks at the rate of
$16 per week and no more. In view, therefore, that the Com-
mission found that plaintiff had lost only a portion of the
function of his leg below the knee amounting to 25 per cent.,
he was awarded an amount which the Commission deemed
to be "in proportion to compensation in other cases." That
is, it allowed compensation in proportion to what plaintiff
would have been entitled to in case he had suffered a total
loss of function of his leg below the knee and above the
ankle. In view that the Commission found no other
disfigurement and found the loss of function or loss
of use of the leg not to exceed 25 per cent. as com-
pared with a total loss, in our judgment, the Commission
fully complied with both the letter and the spirit of our
statute in making an award of 35 weeks.

Plaintiff's counsel do not contend that their client suffered
a loss of use or of function of his leg greater than 25 per
cent. if such loss is considered independently and apart
from his power to earn wages as a coal miner, but they con·

tend that the loss of function in his vocation as a coal miner
was much greater than 25 per cent. They insist that the
medical testimony is undisputed that in following the voca-
tion of a coal miner the use of plaintiff's leg is much more
affected, in that it is more liable to injury than it would be
by following some other manual vocation, and that in view
that plaintiff's earnings would be greater in following the
vocation of coal miner, therefore the Commission should have
determined the loss of use or function of his right leg to be
greater than 25 per cent., and hence should have awarded
him larger compensation. After a careful consideration of
all the provisions of our statute, and upon mature reflection
on the purposes of our Compensation Act, we are forced to
the conclusion that plaintiff's contention in that regard is
untenable. As before pointed out, the loss of earnings is not
an element within the purview of our statute. Wages are
considered only up to a certain limit, and then only for the
purpose of determining the amount to be allowed per week.
The amount earned has no effect whatever upon the length
of time that the weekly payments shall continue. That de-
pends entirely upon the nature and extent of the liability,
and not upon the earnings or earning capacity of the injured
employee. Moreover, when 60 per cent. of the average
weekly wage equals or exceeds a certain amount, to wit, $16,
then the earnings fall entirely out of view and perform no
function whatever. Then again, in providing compensation
for the loss of use or loss of function of a member of the
body, the statute does not differentiate as between vocations
or callings, but merely considers the loss of bodily function
regardless of the vocation or calling of the injured employee.
True it is that if 60 per cent. of the employee's weekly
wages is less than $16, he merely receives an amount equal
to 60 per cent. of his average weekly wage, and that amount
is fixed regardless of his vocation or calling. The same is
also true in case he is entitled to compensation for a partial
loss of use or partial loss of function of some member of the
body. Then again, in the event that the employee has suf-
fered a specific injury, he is entitled to a specific amount

fixed by statute for such injury, and this is so although he suffered no diminution of loss of wages or earnings. Such is the holding of all the courts under statutes similar to ours. We refer to the following as among the well-considered cases which under statutes similar to ours support the proposition just stated; *Kerwin* v. *American Ry. Express Co.*, 273 Pa. 134, 116 Atl. 655; *Case of Clark*, 120 Me. 133, 113 Atl. 51; *De Zeng Std. Co.* v. *Pressy*, 86 N. J. Law, 469, 92 Atl. 278; *Moses* v. *National, etc., Co.*, 194 Iowa, 819, 184 N. W. 746. The authorities are equally clear that in case a specific amount is allowed for the loss of a member of the body a proportional amount will be allowed for a partial loss of the use or partial loss of function of such member. Assuming the amount allowed by the statute for the loss of a leg to be $2,000, the amount that would be allowed    2 for a partial loss of the use or partial loss of function of such leg would be an amount less than $2,000, and in proportion to the extent of the loss or impairment of the use of such leg. That is, if the use were impaired to the extent of 25 per cent., then the amount allowed would be a sum equal to 25 per cent. of the full amount allowed for the total loss. *Foster* v. *Ind. Ins. Com.*, 107 Wash. 400, 181 Pac. 912; *Phonville* v. *New York, etc., Co.*, 226 N. Y. 622, 123 N. E. 258; *Casey-Hedges Co.* v. *Lynch*, 147 Tenn. 173, 245 S. W. 522. In view that the New York case is based upon a statute similar to ours, we take the liberty of quoting from the decision at length. It is there said:

"The Industrial Commission has found that the claimant has lost the use of 75 per cent. of his right hand. His weekly wages being $35.09, it awarded him $20 a week for 183 weeks. Unanimously approving the findings of fact the Appellate Division altered this award to $15 a week for 244 weeks. In this it erred. The act fixes but one rate of compensation for injuries. The workman is to receive two-thirds of his weekly wages not exceeding a certain sum. The extent of his injuries limits not the amount of these payments but the time during which they are to continue. If for the loss of a hand that time is 244 weeks, for the loss of three-fourths of the hand, it is 183 weeks. The weekly compensation for the loss of a hand, arm, foot, leg or eye is not to exceed $20 a week. Permanent loss of the use of any such member is equivalent to the loss. The same measure applies to it. In other cases

$15 is the limit. In 1917 an award was authorized for the pro-
portionate loss of the use of a hand. Clearly the compensation
for such proportionate loss is intended to be some fraction of the
amount allowed for the total loss. The weekly limit is $20 not $15."

The order of the Appellate Division was reversed and the
allowance of the Industrial Commission reinstated.

In *Spring Canyon Coal Co.* v. *Ind. Com.,* 57 Utah, 208,
193 Pac. 821, this court held that in case the statute makes
a specific allowance for a specific injury the Commission
cannot add anything to the amount fixed by statute. Since
that decision was handed down, however, the statute has
been amended so as to include "other disfigurement," or
the loss of "bodily function not otherwise provided for" as
appears from the section as amended that we have quoted
herein. It will be observed, however, that the statute merely
covers "disfigurement, or the loss of bodily function not
otherwise provided for." Therefore, such being the case, the
Commission is vested with some discretion, and it may fix
such an amount as in its judgment shall be "equitable and
in proportion to compensation in other cases." If it were
assumed, however, that the instant case is one "not otherwise
provided for," still we would be powerless to control the
discretion or judgment of the Commission. If the Commis-
sion considered the evidence respecting the alleged disfigure-
ment or loss of bodily function and fixed an allowance in
accordance with its best judgment, we cannot interfere.

We are not unmindful of the fact that in this case plain-
tiff's counsel contend that the act of the Commission in re-
fusing to consider the vocational factor, so called, is purely
a question of law and hence reviewable by us. In view, how-
ever, that we have arrived at the conclusion that the voca-
tional factor is not an element to be taken into consideration
by the Commission, this contention must necessarily fail.

We have perhaps said more than was necessary. We did
so, however, because the question presented is one of first
impression in this jurisdiction and in view of reducing the
number of applicants to this court involving questions that
are either determined by the statute or that are to be de-
termined by the Commission as matters of fact or are refer-

able to its judgment or discretion. In this connection, it may perhaps not be improper to state that this court has already passed upon upwards of 80 cases since the Compensation Act went into effect in July, 1917. The foregoing statement is not made in a spirit of adverse criticism, but the fact is referred to merely to show that the law is still in process of growth and development and that an intelligent and ever vigilant bar is not inclined to permit new remedies or new and untried methods of meeting existing evils to go unchallenged.

While the briefs of counsel for both sides have been very illuminating and helpful, yet, from some of the arguments in plaintiff's brief, his counsel seem to labor under the impression that the compensation acts, to some extent at least, take the place of common-law actions for damages for personal injuries. Such is manifestly not the case. Workmen's compensation acts are not intended to fully compensate an employee for his loss of time and diminished earnings both past and future, nor to compensate him for the pain and suffering incident to the injury. The common-law action is based on some wrongful act of commission or omission on the part of the employer, and the employee assumes all the risks of injury except such as arise out of the negligence of the employer, while under the workmen's compensation acts the employee assumes no risks whatever, and hence his compensation in case of injury is based upon some arbitrary statutory regulations. In view that injuries which in the course of the employment must be compensated by the industries in which they occur and that the industries must assume all the risks of injury and must provide all the means of maintaining the injured employee and his dependents, some arbitrary regulations through which those results may best be accomplished are inevitable. Those regulations are found in the statutes and are intended to prevent injustice to the employer, the employee, and to the public which must ultimately bear a large share of the burdens which are incident to our industrial activities. A proceeding before the Industrial Commission is therefore in no sense an action for damages, and, in view of that, old notions re-

specting the rules or measure of damages must be entirely disregarded.

In view of what has been said, it follows that the award made by the Commission should be affirmed. Such is the order.

GIDEON, THURMAN, and CHERRY, JJ., concur.

WEBER, C. J., did not participate herein.