# ÆTNA LIFE INS. CO. v. INDUSTRIAL COMMISSION OF UTAH

No. 4135.   Decided September 13, 1924.   (228 Pac. 1081.)

1. MASTER AND SERVANT—COMPENSATION ALLOWABLE FOR LOSS OF LEG PRECLUDING USE OF ARTIFICIAL LIMB.   Under Workmen's Compensation Act (Comp. Laws 1917, § 3138), as amended by Laws 1919, c. 63, Industrial Commission cannot award compensation for more than 180 weeks for loss of leg or function thereof at or so near hip joint as to preclude use of artificial limb, in absence of other disfigurement or loss of bodily function resulting from such injury.

2. MASTER AND SERVANT—INDUSTRIAL COMMISSION CANNOT POSTPONE DETERMINATION OF QUESTION OF TOTAL COMPENSABLE DISABILITY.   Industrial Commission, awarding compensation under Comp. Laws Utah 1917, § 3138, as amended by Laws 1919, c. 63, for loss of function of leg so near hip joint as to preclude use of artificial limb, cannot postpone decision as to whether disability was total within Comp. Laws 1917, § 3139, until expiration of six years, but must determine result from facts as best it can; statute conferring continuous jurisdiction to make additional adjudications as they become necessary.

3. MASTER AND SERVANT—ADDITIONAL COMPENSATION FOR LOSS OF EARNING CAPACITY AS RESULT OF LOSS OF LEG UNAUTHORIZED.   Industrial Commission has no jurisdiction to award compensation other than that provided in Compensation Act, and hence cannot find that entire earning capacity of one awarded compensation for loss of function of leg has been swept away, and award additional compensation therefor, in absence of loss of other bodily function or disfigurement resulting therefrom.[2]

4. MASTER AND SERVANT—ADDITIONAL COMPENSATION FOR LOSS OF EARNING CAPACITY FROM LOSS OF LEG HELD NOT AUTHORIZED BY EXISTENCE OF ARTERIOSCLEROSIS.   Award of compensation for more than 180 weeks, for loss of earning capacity resulting from loss of function of leg so near hip joint as to preclude use of artificial limb, held not warranted by fact that applicant was afflicted with arteriosclerosis.

---

[1] *Vukelich* v. *Industrial Commission*, 62 Utah, 486, 220 Pac. 1073; *Spring Canyon Coal Co.* v. *Industrial Commission*, 60 Utah, 553, 210 Pac. 611; *Broderick* v. *Industrial Commission*, 63 Utah, 210, 224 Pac. 876.

[2] *Spring Canyon Coal Co.* v. *Industrial Comm'n*, 57 Utah, 208, 193 Pac. 821.

Proceeding by the Ætna Life Insurance Company to re-view the Industrial Commission's award of compensation, under the Workmen's Compensation Act, to Edward Rogers.

AWARD SET ASIDE AND ANNULLED.

*Bagley, Judd & Ray,* of Salt Lake City, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendant.

See Workmen's Compensation Acts, § 92 (1926 Anno).

FRICK, J.

This is a proceeding under our statute to review a decision of the Industrial Commission of Utah, hereinbefore called Commission, upon the ground that the award made by the Commission, pursuant to its decision, is not supported by any evidence, and is contrary to law.

The facts upon which the award is based were stipulated by the parties, and, with a few minor and immaterial omissions, the stipulation reads as follows:

"It is hereby stipulated and agreed between Edward Rogers, of Idaho Falls, Idaho, and the Ogden Pressed Brick & Tile Company and the Ætna Life Insurance Company that Edward Rogers was injured by an accident arising out of or in the course of his employment with the Ogden Pressed Brick & Tile Company, on August 13, 1919, at Ogden, Utah; * * * that at said time Edward Rogers was working at the rate of six days per week at the rate of $3 per day; that following the occurrence of said accident on August 13, 1919, Edward Rogers was confined to bed in his boarding house in Ogden, Utah, for a period of approximately four (4) weeks; * * * that approximately six weeks after the accident occurred, which was on August 13, 1919, Edward Rogers was taken to the County Infirmary at Roy, Utah; that approximately one month after he was taken to the County Infirmary an X-ray picture was taken. * * * The X-ray picture disclosed a fracture of the neck of the right femur; this fracture undoubtedly occurred on August 13, 1919. Prior to the taking of said X-ray picture Edward Rogers and his friends and advisers were of the opinion that he was simply suffering from a bad sprain. No doctor had attended him between the date of the accident and the date the

X-ray picture was taken, except the unknown doctor who called at his boarding house about three weeks after the occurrence of the accident; that Edward Rogers was confined to bed for a period of approximately four weeks following the accident on August 13, 1919, and thereafter got up and about on crutches, and ever since that time until now he has continued to move around at all times with the use of crutches; that he never has been able to put any weight on his right leg from the date of the accident, August 13, 1919 and cannot now put any weight thereon; that said leg ever since the occurrence of said accident has been totally useless to him as a leg; that, according to the recollection of Edward Rogers, said X-ray picture mentioned above was taken under the supervision of Dr. Ezra R. Rich, who advised Edward Rogers that his leg was broken, and that, in view of the manner in which it was broken, it could not be fixed; that said Edward Rogers remained at the County Infirmary at Roy, Utah, until on or about April 10, 1920; that during the time he remained at said County Infirmary he was not confined to his bed and was not a hospital case, but that he remained there for the reason that he was without funds and had no other friends to care for him;  *  *  *  that, in so far as he has been able to determine by the feel of the leg, the condition thereof has remained approximately unchanged since he began to use crutches about four weeks after the occurrence of the accident on August 13, 1919; that no other part of his body was injured except the fracture of the neck of the femur of his right leg; that no other part of his body since that time has become affected by reason of said injury, so far as is known by Edward Rogers; that on April 7, 1920, he received compensation check for 32 weeks, at $10.38 per week, in the amount of $332.16, and since said time he has been paid compensation regularly at the rate of $10.38 per week, up to and including July 21, 1923, a period of 205 weeks, totaling $2,127.90; that, following the taking of the X-ray picture on or about two and one-half months after the occurrence of the accident, on August 13, 1919, and the statement to him at said time of Dr. Ezra R. Rich of Ogden, Utah, that the leg could not be fixed, he has never had any assurance from any other doctor to any different effect, and has never had any hope or belief that it would ultimately recover, and does not now consider that it will ever get any better; that during the four weeks immediately following the occurrence of the accident his right leg was quite painful ,due to the fracture and bruise of the leg due thereto, but that at the end of said acute stage of disability the pain ceased, except that after he got up and about on crutches he would have no pain from the leg unless he put weight on it or bumped it into something.  While he was at rest the leg was not painful and it was not painful while he was walking about, unless, as stated above,

Certiorari

he bumped it into something or put weight on it; that at the end of said period of four weeks from August 13, 1919, to wit, on or about September 11, 1919, at which time he commenced to use crutches, the condition of his leg and the effect and degree of his loss of bodily function became certain and fixed; that it was totally lost to him at that time and that there has been no substantial change in the condition of his leg since September 11, 1919; that all parties hereto authorize and agree that the Industrial Commission of Utah shall have full authority to proceed without further notice to any of the parties hereto to make an award or decision based on the foregoing stipulated facts, and upon the above stipulated facts and the written report of examination of Dr. S. C. Baldwin, on or about November 26, 1923."

The written report of Dr. S. C. Baldwin, referred to in the stipulation, reads:

"I have just finished the examination of Edward Rogers of Idaho Falls, Idaho, who was injured August 13, 1919, while working for the Ogden Pressed Brick Company, of Ogden, Utah.

"I find he has suffered a fracture of the neck of the right femur, and this has never reunited, with the result that the neck of the femur has all disappeared, allowing the trochanter to come almost up against the head.

"An X-ray taken at this time shows no change from those previously taken except that, if anything, the neck has worn away a little more, allowing the trochanter to come a little closer to the head.

"The X-ray also shows in all of the pictures marked arteriosclerosis of the femoral artery and its branches which show in the plate.

"He is now 65 years of age and this condition has persisted for four years. A bone-grafting operation could be done, and the fragments approximated, and they might possibly unite, and, if they did, in time he might have a very much better leg to walk on. If this is done, it would necessitate freshening up the approximating surfaces of the head and the trochanter, and the putting in a bone screw to hold the fragments in apposition; this would be quite an operation and one that might not get the results hoped for. Therefore, taking his age and the condition of his arteries into consideration, I would not advise the operation, but would rather let well enough alone. * * *"

The Commission, in its decision, says:

"The facts in this case are clear and certain. The parties in interest have no differences of opinion as to facts, their only difference being as to the interpretation of the law in the light of the definitely stipulated facts.

"The question presented to the Commission for its determination is the proper interpretation of section 3138 of our State Industrial Act. In our search for light upon this question, we have referred to two cases decided by our Supreme Court, in which the section above referred to was construed. In the case of *Vukelich* v. *Industrial Comm'n* (62 Utah, 486, 220 Pac. 1073) Mr. Justice Cherry uses the following language: 'A consideration of the whole section indicates the intention to divide injuries causing partial disability into two classes, and to provide a different basis for fixing the compensation of each class: (1) The general provision for all injuries causing partial disability, in which class is included all injuries not otherwise provided for. The weekly compensation for this class of injuries is based in amount on difference in earning ability before and after the injury, and the period of payment depends, within certain limits, on the duration of the disability. (2) The second class includes those injuries which are fixed and permanent in their nature; the consequences and degree of disability of which can be presently ascertained without regard to future developments. The compensation for this class of injuries is computed immediately and definitely, the amount being based on the average weekly wages before the injury, and the period of payment according to a schedule prescribed.' This excerpt indicates to the Commission that where there is a loss of the use of a member, under such circumstances as to render the disability greater than would exist had the injured member been physically removed, the Commission is not obliged to use the schedule set out in the latter part of the section, but may award on the basis of lost earnings for the six-year period, or for such time as would appear to the Commission to be equitable and just in the individual case."

The Commission also quotes the following excerpts from the opinion in the case of *Spring Canyon Coal Co.* v. *Industrial Comm'n*, 60 Utah, 553, 210 Pac. 611:

"When the Legislature fixed the compensation for the loss of a leg, under the statute above quoted, and limited the period within which compensation should be paid to 150 weeks, it certainly contemplated that an artificial limb could be used. It contemplated that the loss of the leg would occur under such conditions that it might be greatly minimized by the use of an artificial limb. * * * But the unusual, unexpected, and abnormal conditions resulting in a prolonged period of disability in the instant case, in the opinion of the court, constitute an injury separate and apart from the mere loss of the limb and the normal period of disability, and entitle the applicant to additional compensation."

The Commission in its decision, in referring to the applicant for compensation, further says:

"He has not only lost the use of his leg at the hip, but his entire earning capacity has been swept away."

The Commission in making its award, uses the following language:

"Wherefore, it is ordered that the Ogden Pressed Brick & Tile Company or the Ætna Life Insurance Company resume payments of compensation which have been discontinued in this case; that all accrued payments be made in a lump sum and continued for the full six-year period, at the end of which time this Commission will determine whether or not this case is one to be settled on a lost earnings' basis for the entire six-year period, or is a case for permanent total disability."

With the exception of the section of the statutes referred to by the Commission, we have thus fully stated both the law and the facts upon which the award is based. So that the reader may also be fully informed respecting the provisions contained in the statute, we here insert so much of Comp. Laws Utah 1917, § 3138, as amended by Laws Utah 1919, p. 154, c. 63, as is material to this inquiry. That section reads:

"Where the injury causes partial disability for work, the employee shall receive, during such disability and for a period of not to exceed six years beginning on the fourth day of disability, a weekly compensation equal to 60 per cent. of the difference between his average weekly wages before the accident and the weekly wages he is able to earn thereafter, but not more than $16.00 a week. In no case shall the weekly payments continue after the disability ends or death of the injured person, and in case the partial disability begins after a period of total disability the period of total disability shall be deducted from such total period of compensation. In the case of the following injuries the compensation shall be 60 per cent. of the average weekly wages, but not more than $16.00 to be paid weekly for the period stated against such injuries respectively, and shall be in addition to the compensation hereinbefore provided for temporary total disability, to wit:"

The statute then provides the specific amounts that shall be allowed for certain specified injuries including:

"For loss of  *  *  *  one leg at or so near the hip joint as to preclude the use of an artificial limb, 180 weeks."

The section as amended in 1919, as before stated, concludes as follows:

"Any other disfigurement, or the loss of bodily function not otherwise provided for herein, such period of compensation as the Commission shall deem equitable and in proportion to compensation in other cases not exceeding 200 weeks.

"The amounts specified in this section are all subject to the limitation as to the maximum weekly amount payable as hereinbefore specified in this section, and in no event shall more than a total of $5,000.00 be required to be paid."

Section 3139 provides:

"In cases of permanent total disability, the award shall be 60 per cent. of the average weekly wages for five years from date of injury, and thereafter 45 per cent. of such average weekly wages until the death of such person so totally disabled, but not to exceed a maximum of $16.00 per week, and not less than a minimum of $7.00 per week. The loss of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof, shall constitute total and permanent disability to be compensated according to the provisions of this section."

We have inserted the foregoing section for the purpose of showing what, under the statute, constitutes a "permanent total disability."

The importance of the question presented for decision has induced us to set forth the facts and the decision of the Commission, including the statute, in detail, rather than to merely state them in substance. In view of the conceded facts and the law, can the award of the Commission be upheld?

The Commission, it seems to the writer, clearly erred in holding that either the decision in _Vukelich_ v. _Industrial Comm'n_ or that in _Spring Canyon Coal Co._ v. _Industrial Comm'n_ lends any support to the award as made. The decision in the _Vukelich_ Case does not only not support the Commission's decision, but is directly contrary thereto. In that case it is directly held that, where the consequences of an injury are "fixed and permanent," the "compensation * * * is computed immediately and definitely," and where, as here, the injury resulted in the loss of a member of the body, the compensation must be fixed in accordancee with the

schedule, which provides a specific compensation for the loss of a particular member of the body. That is, if, as in this case, the injury results in "the loss of one leg at or so near the hip joint as to preclude the use of an artificial limb," the payment of the weekly amount must continue for 180 weeks, and no more. No doubt, if an employé should suffer an injury to one of his legs, and the loss of the leg should not occur for some time, as is often the case, then the employé would receive the weekly compensation for the time which elapsed between the injury and the loss of the leg, under the general clause of the statute, but when the loss of the leg occurs, or the loss of function is complete, he would then receive the amount fixed by the statute for the loss of the leg. This is clearly the intent and purpose of the statute; and to that effect are the holdings of the courts under statutes similar to ours. See *Addison* v. *W. E. Ward Co.*, 207 Mich. 319, 174 N. W. 149,, where the principal just stated is applied.

This court is also committed to the doctrine that the loss of the use or function of a member of the body is equivalent to the loss of such member. *Broderick* v. *Industrial Comm'n*, 63 Utah 210, 224 Pac. 876. In *Neglia* v. *Zimmerman* (App. Div.) 198 N. Y. Supp. 596, it is said: "The loss of the use [function] of a member is equivalent to the loss of the member."

Indeed, all the courts concur in such a conclusion, except those which hold that the injured employé is not entitled to the full amount allowed for the loss of a member unless the member has actually been severed from the body. Such a holding, however, seems not to be in consonance with the spirit of our statute. The amendment of 1919 to our statute, however, permits the Commission to allow compensation for "any other disfigurement or loss of bodily function not otherwise provided for herein," in addition to the specific amount fixed by the statute, provided always that it is made to appear that there is such a disfigurement or loss of bodily function. If, however, there be such a loss, the compensation is again limited to 200 weeks, and in no event can it exceed $5,000. Our statute therefore provides for cases

where particular injuries may not only affect certain members or organs of the body directly, but which injuries may result in the loss of other "bodily function," and, if such be the case, the Commission may also compensate for such loss of function. It may also occur, as pointed out by some of the courts, that an employé may lose a limb or may lose the use thereof, and by reason of the injury, other organs or members of the body may become affected to the extent that the injury may result in a permanent total as contradistinguished from a permanent partial, disability. Where such is the case, under some statutes the compensation is not limited to the loss of the limb, but is increased to meet the exigencies of the particular case. See *Lente* v. *Luci*, 275 Pa. 217, 119 Atl. 132, 24 A. L. R. 1462; *Kerwin* v. *American Ry. Express Co.*, 273 Pa. 134, 116 Atl. 655. The 1919 amendment to our statute, however, seems intended to meet such a contingency by authorizing the Commission, in case of the loss of a member of the body, to allow compensation for the loss of any bodily function, in addition to the amount fixed, for the loss of the member.

Whether the compensation can be extended beyond that, as was done by the Supreme Court of Pennsylvania in *Clark* v. *Clearfield Opera House Co.*, 275 Pa. 244, 119 Atl. 136, where there is no statute like our amendment of 1919, we need not now decide. In that connection it is important to keep in mind however, that in the instant case that question cannot arise, in view of the agreed statement of facts which we shall refer to later.

Nor is the quotation from the decision in *Spring Canyon Coal Co.* v. *Industrial Comm'n*, supra, in point in this case. The Commission, it seems, laid some stress upon the statement in the opinion in that case that the Legislature "contemplated that the loss of a leg would occur under such conditions that it might be greatly minimized by the use of an artificial limb." That statement was quite pertinent to the facts in that case, but can have no application to those in this case. It is manifest that the Legislature did not contemplate that the loss of a leg could be minimized by the

use of an artificial limb, where the leg is amputated at or near the hip joint, or where, as here, there is a complete loss of function of the entire leg to the hip joint. The Legislature, in express terms, provided what the compensation should be in cases where artificial limbs cannot be used. How, then, can it be said that it was contemplated that the use of an artificial limb would minimize the loss of a leg? The exact contrary was contemplated by the Legislature, and therefore, in case of the loss of the entire leg, it provided for the payment of a weekly amount for 180 weeks, instead of only for 150 weeks, as in *Spring Canyon Coal Co. v. Industrial Comm'n,* supra. The latter case was, however, based upon the continuing judisdiction clause of the statute, where the conditions have substantially changed after an award was made, and not upon facts like those in the instant case.

Recurring, now, to the Commission's decision, it will be seen that, notwithstanding that it says the facts are all conceded, it nevertheless refused to decide according to the conceded facts. Moreover, it refused to determine whether the disability was total or otherwise until the expiration of six years. The Commission has no such power. It, like all other administrative bodies or courts, must determine what the result should be from the facts as best it can. If it can refuse to determine what the employer shall pay as compensation until six years have elapsed, it can also refuse to fix the compensation the employé shall receive until the expiration of some stated period of time. So that no injustice may result, the statute has wisely conferred continuous jurisdiction on the Commission to the end that, if in particular cases and in peculiar circumstances additional adjudications may become necessary, the Commission, within the limits imposed by the statute, may make them. The Commission may, however, not depart from the statute; nor may it ignore the facts in any particular case.

In this case it is expressly stipulated that after the end of four weeks from the date of the injury the loss of function of applicant's leg was complete; that it so remained

ever since, and was in that condition when the facts were submitted to the Commission; that no other organ was affected by reason of the injury, and that there was no other loss of bodily function. Notwithstanding that, the Commission ordered payment of compensation in an amount in excess of that fixed by statute. Let it again be said that if the Commission can increase the statutory compensation, then can it likewise decrease it and thus deprive the injured employé of what is legally due him. We do not make this observation for the purpose of criticizing the Commission. We are well aware of the humane impulses of the several members of the Commission, and of their constant effort to mete out justice to the unfortunate, but we are pointing out these things merely to show the importance of following the law as it is written. True it is that the law may be imperfect, and by reason of its generality may not always reflect poetic justice in every case, but it is of far greater importance that each citizen may know what his rights are under the law, and that the law will be enforced, than it is that the law shall be perfect in all things. The law can be amended so as to meet new emergencies, but the evils that will necessarily result from the refusal of either courts or commissions to administer the law as it is written cannot be guarded against.

We are not unmindful of the Attorney General's argument that the conditions that arise out of the Administration of the Compensation Act are so varied and complex that the Commission should be permitted to exercise some degree of discretion. Whenever the Legislature, in its wisdom, deemed it proper to clothe the Commission with discretion, it did so in the statute. There are numerous instances where the Commission is given discretion. It, however, has, and can have, no discretion to authorize compensation other than such as is provided in the statute. Neither has it, nor can it have, any discretion to do aught save to act in accordance with the facts. If in this case the Commission was satisfied, or had reason to believe, that the facts were not correctly stated in the agreed statement of facts in any particular, it

had the power to call to its aid any agency from which the true state of the facts could be ascertained. Not having exercised that power, both the Commission and we are bound by the facts as stipulated. According to these facts the Commission had no authority to find or make the statement that "his entire earning capacity has been swept away." The mere loss of a leg does not necessarily have that effect, and there is nothing in the statement authorizing such a conclusion. But, assuming that that were so, the law, nevertheless, fixes the compensation for the loss of a limb. The amount thus fixed can only be added to in case of the loss of other "bodily function" or "disfigurement." The stipulation, in express terms, states that there was no other loss of bodily function. If, therefore, the loss of a leg would prevent one from earning money, that fact would not confer power upon the commission to increase compensation any more than it would have the power to diminish the compensation because the employer offered to show that, notwithstanding the loss of the leg, the employé was earning as much or more than he did at the time of the injury, in a case like this where the loss of a member of the body is in question, and nothing more. Where, as here, all that is involved is the loss of, or the loss of the use or function of, a member of the body, the rule announced by this court in *Spring Canyon Coal Co.* v. *Industrial Comm'n*, 57 Utah, 208, 193 Pac. 821, controls. See, also, to the same effect, *Moses* v. *National, etc., Co.*, 194 Iowa, 819, 184 N. W. 746.

Nor is the suggestion of the Attorney General that the X-ray disclosed that the applicant was afflicted with arteriosclerosis of importance in this case, for the following reasons: (1) According to Dr. Baldwin's statement, arteriosclerosis showed in all the X-ray pictures taken from the first, and hence the sclerosis must have existed at the time of the injury, and could not have been caused by it; and (2) the Commission did not base its award, and under the stipulated facts could not have based it, upon the ground of "loss of bodily function not otherwise provided for." Besides, arteriosclerosis is as common in old age as defective

or failing eyesight. Indeed, the former is just as much a symptom of old age as the latter, and hence it is a normal, rather than an abnormal, condition. The Commission, in view of the stipulated facts, was, however, powerless to find that the sclerosis was the result of the injury, either in whole or in part, and therefore the latter condition could have no influence on the award.

The Attorney General also insists that, while the applicant has lost his leg, he has lost more than that. As we have already pointed out, such may be the result in some cases, and, if it is, it can easily be made evident so that all may know what the facts are. In this action the stipulation is directly to the contrary, and neither the Commission nor this court can depart from the facts.

It follows from what has been said that the award of the Commission is contrary to law, and therefore is set aside and annulled, with costs.

WEBER, C. J., and THURMAN, GIDEON, and CHERRY, JJ., concur.