No. 2508.

. Second Circuit.

---

BYWOG v. LA-TEX COMMUNITY OIL COMPANY, INC.

---

(February 8, 1926.   Opinion and Decree.)
(March 11, 1926.   Rehearing Refused.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Master and Servant— Par. 160 (a).**

If an employee suing for compensation under the Workmen's Compensation Act No. 20 of 1914 by his own conduct, inactivity, and neglect after an injury, suffers a member of his body to become useless when with proper effort on his part, without unusual pain or suffering, it could have been restored, he cannot recover compensation for disability.

2. **Louisiana Digest—Master and Servant —Par. 159, 160 (b).**

Where there is total disability to an injured employee and also a serious impairment of a physical function due to an accident, he can recover under the Workmen's Compensation Act No. 20 of 1914, Section 8, Subsection 1(b), for total disability during the period of disability and also for permanent impairment of a physical function under Section 8, Subsection 1(e), the compensation under Section 8, Subsection 1(e), beginning when that under Section 8, Subsection 1(b), ends.

3. **Louisiana Digest—Appeal—Par. 759.**

Clerical errors in the judgment may be corrected without a rehearing.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo, Hon. E. P. Mills, Judge.

Action by Henry Bywog against La-Tex Community Oil Company, Inc., for compensation under the Workmen's Compensation Act No. 20 of 1914.

There was judgment for plaintiff, and defendant appealed.

Judgment amended and affirmed.

T. H. McGregor, of Shreveport, attorney for plaintiff, appellee.

R. B. Baker, of Vivian, attorney for defendant, appellant.

ODOM, J. This is a suit under the workmen's compensation act. Plaintiff was employed by defendant at a weekly wage of $31.50. On May 6, 1924, while at work at a drilling rig, his left hand was caught between a block and the cables attached thereto, and three of his fingers on that hand—the forefinger, middle finger and ring finger—were badly crushed. Dr. Wren, who attended him and dressed his wound, and has since treated him, describes his injuries as follows:

"He had three broken fingers, crushed fingers, the ring finger, the middle finger and the fore finger. One of them, the fore

finger, was a compound communated fracture, and the others were crushed. I could not diagnose them as fractures exactly, but they were crushed somewhat flat and the bones of the fore finger were badly broken up, and the skin broken on all the fingers, and especially the fore finger."

Dr. Wren says that he removed some portions of the fractured bones, dressed the wound and put the fingers in splints. At the end of thirty days he removed the splints, and at that time the patient was not able to use his hand at all because the fingers were stiff. His plan was to loosen these joints, and he says that it appeared at that time that the plaintiff should be able to use his hand within a reasonable length of time, but that the fingers would not function and would remain stiff for quite a long time. He applied the massage treatment and instructed the patient to work them with his other hand and to try to get some motion in them. He said that the plaintiff had no feeling in his hand at first, but that with that treatment the fingers have gradually improved. Later on he gave him electrical treatment, which has caused them to improve further. He says that he has continued to treat plaintiff at intervals of about two weeks, the last treatment having been administered about two weeks before the trial, which took place on May 26, 1925, about a year after the accident.

He was asked how he classified plaintiff's incapacity—whether permanent or merely temporary. His answer was, substantially, that the trouble had been that he could not close his fingers, but that in his opinion the middle finger and ring finger would in time function normally,

"especially as soon as they are put to work".

He says that plaintiff's fore finger is pretty stiff and doubts if it will ever function normally, but thinks that it should function at least fifty per cent of normal and that "the others, I think, will function normally in the course of time".

He was asked by the court how much time would be required, and he said:

"Judge, that depends on what he does. This fore finger will remain stiff or one-half stiff permanently, and the others in about four months from now should function normally. It depends on how much he puts these other fingers to use in trying to make them function."

Further questioned, he said:

"Why, he has a total disability to perform oil field work. He could do little light jobs."

He states that he does not think plaintiff could work on a rig or could lay pipe line, and probably he could not pump, but that he could drive a team.

Dr. Wren's testimony is that he has been disappointed in the progress towards recovery by plaintiff; he says that plaintiff's hand is gradually improving all the time, and that the fingers all healed normally, but they did not get the good results expected as to the fore finger, which, he thinks, will remain stiff. He says:

"The injury to the flesh healed within thirty days, but the repair to bones is not nearly quite so fast. They are still tender and sore."

And he was asked:

"Do you mean to say by that, that that bone still needs some healing to recover to a normal condition?"

And he said:

"It does not, but the blood supply and the nerve supply is not normal."

He says, further, that within ninety days from the date of the injury the bones had healed, except that plaintiff could not bend

them. He advised plaintiff to use his fingers after the flesh and bones had healed, and to do some light work around the house, clearing up new ground, anything to exercise the fingers, as that is the only method by which the circulation of the blood could be restored and the fingers brought back to normal; but whether plaintiff has followed his advice, he does not know, although plaintiff told him that he had done some light work.

In sum, Dr. Wren's testimony is that plaintiff had three of his fingers badly crushed; that he was disabled totally for quite a while; that the fore finger is permanently stiff in the first joint and partially stiff in the second joint; that the other two fingers have healed perfectly, but that they were at the time of the trial still partially stiff, but that with proper use and exercise would function normally, and that there would be no disability so far as they are concerned.

He advises plaintiff to work in order to restore the blood circulation in these fingers, and it is his opinion that the hand with use will be normal, except the fore finger, which, he thinks, will be only fifty per cent of normal. His testimony as to final results is as follows. He was asked:

"Isn't it a fact that the question of its usefulness depends largely on the amount of use to which he puts it?"

And he said:

"That is true of the ring and middle finger, but I don't think the forefinger will ever function very much more than it does at present."

Dr. C. H. Pardue examined plaintiff's hand twice, one a short time after the accident and also about the time of the trial. He finds a great improvement now. In describing the condition of plaintiff's hand at the time of the trial, Dr. Pardue said:

"Well, the first finger, the first joint, seems slightly stiff—the first joint, the joint next to the end. Some function in the middle joint, I would say practically one-half."

"Yes, sir, and in the middle finger it seems to be almost normal in the first joint, and pretty good also in the middle joint. I would say probably seventy-five per cent. Now, the ring finger seems to be about seventy-five per cent normal. That would be my estimate."

He advised the plaintiff to go to work and use the fingers, and stated that unless they were used they would be permanently stiff, and states the reasons, but gives it as his opinion that with proper use the middle and ring fingers would have functioned normally, but he thinks that inasmuch as they have remained in a stiff condition so long they will probably never be normal.

The sum and substance of his testimony is, that plaintiff had injuries to his hand about as described by Dr. Wren; that the flesh and bones healed normally, except in the index or fore finger; that with proper use all along the middle and index fingers would have been restored to normal, but that now it is probable they will never be altogether normal; that the index finger will always be stiff in the first joint and partially stiff in the second joint, and that this finger will never function more than fifty per cent of normal.

Both Dr. Wren and Dr. Pardue are of the opinion that an injury to the fingers, such as that suffered by plaintiff, should cause no permanent disability, provided the patient does what he should do to assist nature in its work, but that with non-use the joints will necessarily remain stiff. They point out that if the joint itself is injured there will be stiffness which can-

not be overcome, but that there seems to be no injury to the joints of plaintiff's fingers, except to the first joint in the fore finger.

Both these physicians advised plaintiff to work. Therefore we must assume that they see no reason why he should not do some work. In other words, there seems to be no reason to assume that the exercise of the fingers would cause such pain as to make it unreasonable to ask that he make use of them in such a way as to bring about their restoration.

Plaintiff says he does not use the hand because his fingers hurt. We have no doubt that he could not use his hand for a long time in doing heavy work. It would be unreasonable to suppose that he could. But that was never expected of him. He was advised to do only light work, which, in our opinion, he could have done.

We think he has failed deliberately to do that which he reasonably should have done to restore the function to his fingers, and that if there is now or was at the time of the trial any disability to the fingers other than the fore finger, it is on account of his willful neglect.

At one time Dr. Wren wrote to the insurance company about plaintiff's condition and about the probability of his recovery, and in his letter he said, among other things:

"He (referring to plaintiff) thinks if he goes to work he might forfeit his insurance."

And in explaining that letter he said, as a witness on the trial:

"I had urged him a number of times to get a job cleaning new ground or something like that, even though he did not earn but fifty cents a day at it, and that he would be earning that much, and at the same time he would be forcing that hand to work. And he has stated that if he went to work even for fifty cents a day he would probably forfeit his insurance."

The testimony of both these physicians convinces us that it is their opinion that plaintiff has intentionally refused to work and neglected his hand to such an extent as to gradually retard the progress of healing.

If an employee by his own conduct by his inactivity and neglect after an injury suffers a member of his body to become useless when with proper effort on his part without unusual pain or suffering it could have been restored, he cannot recover compensation for disability.

The plaintiff was totally disabled on account of the injury. Just how long he would have been disabled if he had done what was reasonably expected of him in order to restore his fingers, it is difficult to say; but we think under the evidence the period of total disability should be fixed at one year. Whatever disability remained at the end of that time to do work of a reasonable character is the result of plaintiff's own neglect and unwillingness to do what he was reasonably expected to do in order to restore the usefulness of his fingers.

The defendant called several witnesses, who are skilled oil field workers and derrick men, who testified that they knew plaintiff personally and knew the condition of his hand, and that there was no reason why he should not do oil field work without pain and without inconvenience, and they further testified that if he wanted work in the oil fields he would have no trouble in getting it at a wage equal to that which he received prior to the injury.

However, there is unquestionably a permanent impairment of the fore finger of

the left hand. The first joint is stiff and the second joint is slightly so. It is slightly shrunk at one place and somewhat enlarged at another. But the condition of that finger is not such as to produce inability to do work of a reasonable character. He is therefore not entitled to compensation on account of disability beyond one year. But he is entitled to compensation under clause (e) of subsection 1 of section 8 of the statute, which provides:

"Where the usefulness of a member or any physical function is seriously, permanently impaired, the court may allow such compensation as is reasonable in proportion to the compensation hereinabove specifically provided in cases of specific disability above named, not to exceed sixty-five per centum of wages during one hundred weeks."

Act 43 of 1922, under which this suit was brought, provides that for the loss of the first or index finger an employee is entitled to sixty per centum of wages for thirty weeks, which, in this case, would amount to $18.90 a week, or, for thirty weeks, $567.00.

In proportion to this we think plaintiff should have compensation at $3.00 a week during one hundred weeks, beginning on May 6, 1925, the date on which compensation for total disability ceases.

Plaintiff was receiving a weekly wage of $31.50. For the total disability period he is entitled to sixty per centum of that amount.

The proof shows that his medicine and doctors' bills amounted to $214.50, for which amount he is entitled to judgment.

The defendant having paid him the sum of $540.00, is entitled to credit for that amount.

For the reasons assigned it is ordered, adjudged and decreed that the judgment appealed from be amended so as to read as follows:

It is therefore ordered, adjudged and decreed that the plaintiff, Henry Bywog, do have judgment against and recover from the defendant, La-Tex Community Oil Company, Inc., compensation at eighteen and 90-100 dollars a week for a period of fifty-two weeks, dating from the date of his injury, May 13, 1924; and compensation at the rate of three and 00-100 dollars per week during one hundred weeks, this compensation to begin on the date the other compensation ceases. These payments to bear interest at five per cent per annum from the date on which they were due; the defendant to have credit for the sum of five hundred and forty dollars already paid. All costs to be paid by defendant.

---

## ON REHEARING

REYNOLDS, J. Defendant calls our attention to the fact that our judgment allows plaintiff compensation at $18.90 per week, whereas the maximum amount allowable under Act 43 of 1922 is $18.00 per week.

Our judgment was based upon the Act of 1924 under which the maximum amount allowable is $20.00 per week; but the injury to plaintiff occurred before that act went into effect, and therefore the contention of defendant is correct. Our judgment therefore allowed plaintiff more than the law authorized.

However, it is not necessary to grant defendant a rehearing in order to correct this error. The error can be corrected without granting a rehearing.

It is therefore ordered, adjudged and decreed that the judgment heretofore ren-

dered by us herein be corrected so as to read as follows:

It is therefore ordered, adjudged and decreed that the plaintiff, Henry Bywog, do have judgment against and recover from the defendant, La-Tex Community Oil Company, Inc., compensation at eighteen and 00-100 dollars per week for a period of fifty-two weeks, dating from the date of his injury, May 13, 1924; and compensation at the rate of three and 00-100 dollars per week during one hundred weeks, this latter compensation to begin on the date the other compensation ceases. These payments to bear interest at the rate of five per cent per annum from the date on which they became due; the defendant to have credit for the sum of five hundred and forty dollars already paid. All costs to be paid by defendant.