58 So.2d 557 (1952)
BROWN
v.
INTERNATIONAL PAPER CO.
No. 7787.
Court of Appeal of Louisiana, Second Circuit.
April 30, 1952.
*558 Madison, Madison, Files & Shell, Bastrop, for appellant.
Dhu & Lea S. Thompson, Monroe, for appellee.
McINNIS, Judge ad hoc.
This is a suit by the plaintiff for compensation at the rate of $29.35 per week, not to exceed four hundred weeks, subject to a credit of payments made up to November 27, 1950.
The District Judge in a well written and reasoned opinion has, in our opinion, clearly resolved the facts and the law, in which opinion he rendered judgment for the plaintiff as prayed for. From this judgment, defendant prosecutes this appeal and asks that the judgment appealed from be reversed, and, if not, that compensation be limited to not more than twelve weeks from November 27, 1950.
We copy the opinion of the District Judge and adopt his finding of fact as follows:
"Plaintiff, Caesar Brown, a colored employee of the International Paper Company mill at Bastrop, was injured in the right shoulder region on April 8, 1950 when struck by a large stick of wood which became disengaged from a sprocket chain conveying it to the bark bin. The force of the injury was sufficient to cause a separation of the acromium process from the claviclea severe dislocation. He seeks compensation for total and permanent disability at the rate of $29.35 per week during disability not to exceed four hundred weeks, subject to a credit of payments to November 27, 1950.
"The employer does not deny the injury was received during the employment but contends that plaintiff's injuries were confined to the right shoulder, that the specific injury was to the acromium clavicular joint, and had plaintiff followed instructions and exercised his shoulder as directed by the doctors, he would have been well in a maximum period of twelve weeks from November 27, 1950.
"If supported by proof, this defense would have merit for the accepted rule on our jurisprudence is that where an employee's improper and unnecessary activity or inactivity, conduct or misconduct, or his wilful and unreasonable failure to cooperate on the treatment given him seriously retards his recovery, and prolongs his disability, he cannot recover compensation beyond the period that would have been necessary for his recovery had he properly cooperated.
"To this effect are the following authorities: O'Niel v. (M.W.) Kellogg Co., (La.App.) 190 So. 182; Bywog v. La-Tex Community Oil Company, Inc., 3 La.App. 699; Savin v. T. Smith & Sons, Inc., (La.App.) 143 So. 728; Costello v. French Market Ice Company, (La.App.) 159 So. 466; Annotation 54 A.L.R. 637, 644.
"It is an affirmative defense here asserted, and must be established by persuasive evidence. A careful review of the records results in finding the defense is not so proven.
"Following the injury on April 8, 1950 Brown was treated by Dr. J. N. Jones, who properly diagnosed the dislocation, immobilized the shoulder and arm and applied heat treatments until July 12th when he was discharged and told to go back to work. Instead of returning to his employment he, of his own volition, on July 13th caused Dr. Bernard Soto to examine his shoulder and was told the condition of it was such that it required the services of an orthopedic specialist. This information was communicated to the officials of the International Paper Company and they sent the employee to Dr. A. S. Hamilton who on August 1, operated to remove the outer 1½ inches of the clavicle. Reexamined on August 17th the patient had recovered about one-sixth of his normal arm and shoulder movement, and on September 10, abduction of the right arm of 80 degrees was achieved. Dr. Hamilton also saw Brown again on October 25th *559 and November 28th with slight but slow increase in abduction. Following the operation diathermic treatments and massages were regularly administered by Dr. Jack Rawls. On November 27th, Brown was discharged by Dr. Rawls who testified he was of the opinion that with light work complete recovery in time would result. This was also the testimony of Dr. Hamilton who stated recovery should eliminate disability within three months or less. The testimony of these two doctors gives evidence that the employee was still suffering from an undetermined amount of pain and had not yet regained abduction of the right arm above the height of his shoulder.
"After November 27th, 1950, plaintiff did not report for light work as suggested. He was directed to continue to exercise his arm, which he and his wife testified he did to the best of his ability. His compensation was stopped on November 27th and further medical assistance from his employer withdrawn.
"On December 18th and 19th, Brown was examined by Drs. J. E. Walsworth, Irvin J. Wolff and C. H. Hill and the shoulder region subjected to X-ray examination by Dr. Charles M. Lobrano. The latter testified:
"`This film reveals the distal third of the clavicle removed or absent. There is a marked amount of new bone formation between the inferior portion of the distal end of the clavicle, with a bulge of bone extending between the distal end of the clavicle across to the acromial process. There is a separation between the acromial process and the portion of the clavicle that was removed, with a soft tissue interval of about 2½ or 3 inches. The humerus is negative. There also is a small amount of calcification in the ligaments between the corocoid process, extending from this process upward to the distal end of the clavicle.'
"The above findings are not disputed but I do not understand (they) are necessarily indicative of total disability. The extent of disability is dependent upon pain and weakness upon exercise and motion of the arm and shoulder. Drs. Walsworth's and Hill's findings indicate an appreciable amount of pain and Dr. Hamilton admitted there was probably some.
"Therefore it would seem clear that on November 27th, 1950 and for some time thereafter plaintiff was not able to resume work of the same character. Examinations closer to the date of trial reveal some atrophy and abduction of the right arm reduced to 60 to 80 degrees. This latter condition, defendant argues, has been caused by the refusal of the employee to accept light work at the mill and regularly exercise the muscles of the shoulder.
"It must be recalled that Brown as of November 27th, 1950 had been discharged from further medical attention by Dr. Rawls and acting on such report the continuance of compensation was stopped. However, a light job was offered. Under the circumstances, one may well understand the uncertain mental state of the plaintiff. If actually he was unable to do more than light work such as sweeping and full recovery was uncertain, time would destroy his claim and leave him handicapped in competition for employment. He was not required to accept light work as a solution for his claim, except where reasonable certainty of recovery from disability within a definite period can be established. The Workman's Compensation Act [LSA-R.S. 23:1021 et seq.] does not santion speculation with respect to the duration of an employee's disability. Puchner v. Employer's Liability Assur. Corp., (198 La. 921) 5 So.2d 288, 292; Barr v. Davis Bros. Lumber Co., 183 La. 1013, 165 So. 185; Smith v. Maier, (La.App.) 16 So.2d 682.
"The only act of non cooperation charged to plaintiff is that he failed to accept a light job which would have given him an undetermined amount of *560 exercise and might not have restored his shoulder function to normal. It is not disproven that Brown suffered from acute pain and weakness. The loss of abduction is evidence of a failure to gain strength. Furthermore, only by inference from atrophy of the shoulder muscles may we say Brown and his wife testified falsely that he regularly took the prescribed exercises at home.
"There should be judgment herein for plaintiff as prayed for. Expert fees of $25.00 each should be taxed as costs."
There is little dispute about the facts of this case, but the medical testimony is in conflict as to whether or not the plaintiff is suffering from any disability as a result of the accident. It is contended by the doctors who testified for defendant that if the plaintiff had followed the directions given him by the doctors to exercise his shoulder, he would have fully recovered in not more than twelve weeks from November 27, 1950, and that his failure to do this is the cause of his disability, if any, and that he should not be awarded further compensation. In support of this argument, a number of cases have been cited. Savin v. T. Smith & Sons, Inc., La.App., 143 So. 728, involved a shoulder injury which appears from a reading of that case to be minor in comparison to the injuries sustained by plaintiff here.
Bywog v. La-Tex Community Oil Co., Inc., 3 La.App. 699, involved only an injury to some fingers and is not to be compared with the serious injuries sustained by plaintiff here.
Costello v. French Market Ice Co., La. App., 159 So. 466, involved a leg injury apparently minor in comparison to the injuries suffered by the plaintiff in this case.
Myles v. Forcum-James Co., La.App., 16 So.2d 542, involved a hand that had become infected by cement getting into plaintiff's glove, and the injury there was minor in comparison to the injuries sustained by plaintiff in this case.
Defendant relies largely on the medical testimony of Doctors Hamilton and Rawls, both of whom were of the opinion that plaintiff's condition was such that if he did engage in light work, it would restore full function of his arm within six weeks, and at most, twelve weeks. But the test is not whether a plaintiff in a compensation case is able to do light work, but is whether or not he is able to do the same work he was doing when injured, or similar work, and we are not to speculate on the time it would require for his recovery or in fact whether he would recover at all, especially in the face of the conflicting medical testimony.
Defendant criticizes the testimony of Doctors Walsworth, Wolff and Hill, who testified for plaintiff, partly because they had not treated plaintiff and saw him only a few times, no earlier than December 18, 1950, some eight months after the accident. But these doctors, and especially Dr. Walsworth, who appears to be a specialist in his field, had the benefit of the case history and the X-rays of plaintiff's shoulder, and the testimony appears reasonable to us.
It is not possible to reconcile the medical testimony in this case, when testimony cannot be reconciled, courts are justified in accepting the testimony that appears to be most reasonable, and in view of the serious injury to plaintiff and the operation he underwent to remove a part of the clavicle, we believe that the testimony of plaintiff's doctors to the effect that he is totally disabled should be accepted. Whether or not he will recover, we do not know, but the defendant has the right to rule him into court after six months from date of the judgment in the District Court to test whether or not he has recovered.
For these reasons, the judgment appealed from is affirmed, at the cost of defendant in both courts.
GLADNEY, J., recused.
KENNON, J., not participating.