## SPRING CANYON COAL CO. et al. v. INDUSTRIAL COMMISSION OF UTAH.

No. 3505. Decided November 12, 1920. (193 Pac. 821.)

1. STATUTES—DUTY OF COURT TO RECONCILE INCONSISTENCIES IF POSSIBLE, OTHERWISE TO ASCERTAIN LEGISLATIVE MEANING BY OTHER MEANS. It is the duty of the Supreme Court to reconcile apparent inconsistencies in a statute when possible, so as to give effect to its every provision, and when it is impossible it becomes the duty of the court to ascertain the meaning of the Legislature by the application of other means not inconsistent with the legislative intent.

2. MASTER AND SERVANT—AWARD FOR TEMPORARY DISABILITY IN ADDITION TO COMPENSATION FOR LOSS OF LEG UNAUTHORIZED. Under Comp. Laws 1917, §§ 3137, 3138, the Industrial Commission was without authority to allow compensation for temporary total disability of an injured employé in addition to compensation for loss of his leg above the knee, leaving a stump sufficient to permit the use of an artificial limb; there having been no other injury, and the temporary total disability having been caused solely by the loss of the leg.

Action by the Spring Canyon Coal Company, the employer, and others, against the Industrial Commission of Utah, to review its award of compensation under the Industrial Act in favor of Irvin Wimber, the employé.

AWARD AS MADE ORDERED SET ASIDE, and defendant directed to proceed in accordance with the opinion.

The authorities cited in plaintiff's brief were:  *In re Maranovitch,* 65 Ind. App. 489, 117 N. E. 530; *Stefan* v. *Red Star Mill & Elev. Co.,* 106 Kan. 369, 187 Pac. 861; *Kramer* v.*Sargent & Co.,* 93 Conn. 26, 104 Atl. 490; *Hull* v. *U. S. Fidelity & Guaranty Co.,* 102 Neb. 246, 166 N. W. 628; *In re Denton,* 65 Ind. App. 426, 117 N. E. 520; *Morck* v. *White,* 41 Utah, 480, 126 Pac. 330.

The authorities cited in defendant's brief were:  *Marhoffer* v. *Marhoffer,* 220 N. Y. 543, 116 N. E. 379; *Limron* v. *Blair,* 181 Mich. 76, 147 N. W. 546, 5 N. C. C. A. 866; *Nitram Co.* v. *Creagh,* 84 N. J. Law, 243, 86 Atl. 435, 3 N. C. C. A. 587; *George W. Helme Co.* v. *Middlesex Common Pleas,* 84 N. J. Law, 531, 87 Atl. 72, 4 N. C. C. A. 674; *Stubbs* v. *Industrial Board,* 280 Ill. 208, 117 N. E. 419; *Wells* v. *Industrial Commission,* 285 Ill. 647, 121 N. E. 256; *Industrial Coal & Mine Co.* v. *Industrial Commission,* 293 Ill. 524, 127 N. E. 703; *Franko* v. *Wm. Schallhorn & Co.,* 93 Conn. 13, 104 Atl. 485; *Kramer* v. *Sargent & Co.,* 93 Conn. 26, 104 Atl. 490; *Industrial Commission of Colorado* v. *Ocean Accident & Guarantee Corporation* (Colo.) 180 Pac. 568; *Slago* v. *Industrial Commission,* 293 Ill. 271, 127 N. E. 751; *Holt* v. *Wood Bros.,* 5 N. C. C. A. 870; *Bonaldi* v. *Hamburg American Line,* 36 N. J. Law J. 302; *Loughman* v. *Home Brewing Co.,* 36 N. J. Law J. 113.


*De Vine, Stine & Gwilliam,* of Ogden, for plaintiff.


*Dan B. Shields,* Atty. Gen., and *Jas. H. Wolfe,* Asst. Atty. Gen., for defendant.


THURMAN, J.


There is no controversy in this case concerning the facts. On October 8, 1918, one Irvin Wimber, while in the employ of the plaintiff coal company, was severely injured in his left leg resulting in the complete loss thereof.   Two days afterwards the limb was amputated at the knee joint, and a period

of total temporary disability ensued from the date of the accident to and including November 15, 1919.

The applicant filed his petition under the Industrial Act for compensation. The commission found the above facts, and made its award for the sum of $12 per week from October 19, 1918, to and including November 15, 1919, in the sum of $674.38 on account of temporary total disability, and in addition thereto awarded compensation for the loss of the limb for a period of 150 weeks at $12 per week, not to exceed the sum of $1,800. Other allowances were made, but they are not involved in the question presented for our consideration.

This is an action to review the proceeding. But one question is involved, Did the commission exceed its jurisdiction in allowing compensation for the loss of the leg and in addition thereto compensation for temporary total disability? Plaintiffs strenuously contend that the law as it existed at the date of the accident permitted only compensation for the loss of the leg, as specifically provided in Comp. Laws Utah 1917, § 3138. Defendant contends that compensation should also be allowed as provided in section 3137. A solution of the question can best be determined by quoting in full the sections referred to and interpreting their meaning. We have italicized such portions of the sections as we deem of special significance in view of the argument and matter to be determined.

3137. "In case of temporary disability, the employé shall receive 55 per cent. of his average weekly wages so long as such disability is total, not to exceed a maximum of $12 per week, and not less than a minimum of $7 per week; but in no case to continue for fore than six years from the date of the injury, or to exceed $4,500."

3138. "Where the injury causes partial disability for work, the employé shall receive, during such disability and for a period of not to exceed six years beginning on the eleventh day of disability, a weekly compensation equal to 55 per cent. of the difference between his average weekly wages before the accident and the weekly wages he is able to earn thereafter, but not more than $12 a week. In no case shall the weekly payments continue after the disability ends, and in case the partial disability begins after a period of total disability the period of total disability shall be

deducted from such total period of compensation. *In the case of the following injuries the compensation shall be 55 per cent. of the average weekly wages, but not more than $12 to be paid weekly for the periods stated against such injuries respectively,* to wit:

"For loss of:

One arm at or near shoulder...........................200 weeks
One arm at the elbow.................................180 weeks
One arm between the wrist and the elbow..............160 weeks
One hand ...........................................150 weeks ·
One thumb and the metacarpal bone thereof........... 60 weeks
One thumb at the proximal joint..................... 30 weeks
One thumb at the second distal joint................ 20 weeks
One first finger and the metacarpal bone thereof....... 30 weeks
One first finger at the proximal joint.................. 20 weeks
One first finger at the second joint..................... 15 weeks
One first finger at the distal joint..................... 10 weeks
One second finger and the metacarpal bone thereof..... 30 weeks
One second finger at the proximal joint................ 15 weeks
One second finger at the second joint.................. 10 weeks
One second finger at the distal joint..................  5 weeks
One third finger at the metacarpal bone thereof........ 20 weeks
One third finger at the proximal joint................. 12 weeks
One third finger at the second joint...................  8 weeks
One third finger at the distal joint...................  4 weeks
One fourth finger and the metacarpal bone thereof..... 12 weeks
One fourth finger at the proximal joint...............  9 weeks
One fourth finger at the second joint.................  6 weeks
One fourth finger at the second joint.................  6 weeks
One fourth finger at the distal joint.................  3 weeks
One leg at or so near the hip joint as to preclude the use
    of an artificial limb...............................180 weeks
*One leg at or above the knee where stump remains sufficient to permit the use of an artificial limb*..........150 weeks
One leg between the knee and ankle...................140 weeks
One foot at the ankle................................125 weeks
One great toe with the metatarsal bone thereof........ 30 weeks
One great toe at the proximal joint................... 15 weeks
One great toe at the second joint..................... 10 weeks
One toe other than the great toe with the metatarsal bone
    thereof ......................................... 12 weeks
One toe other than the great toe at proximal joint......  6 weeks
One toe other than the great toe at second or distal joint  3 weeks
One eye by enucleation...............................120 weeks
Total blindness of one eye...........................100 weeks

"The amounts specified in this section are all subject to the limitation as to the maximum weekly amount payable as herein-

before 'specified in this section, and in no event shall more than a total of $4,500 be required to be paid."

It will be noted that the first sentence of section 3138, down to and including the word "compensation" relates to partial disability on account of injuries not resulting in the loss of a member, and allows compensation therefor at $12 per week while the disability continues, not exceeding six years, while the remainder of the section relates to permanent partial disability on account of the loss of a member and allows as compensation therefor a fixed and definite amount. As to these amounts the commission has no discretion; when the loss of the member is ascertained the law specifically determines the compensation. As to injuries of this character the section last quoted reads:

"In the case of the following injuries the compensation shall be 55 per cent. of the average weekly wages, but not more than $12 to be paid weekly for the periods stated against such injuries respectively, to wit."

Then follows an enumeration of specific injuries, consisting in each case of the loss of a member, and the number of weeks for which the person injured is entitled to compensation.

The meaning of the language last quoted, together with the enumeration following, standing alone, seems to the writer to be plain and unambiguous. It means that for the injuries specified a definite sum is allowed, payable in weekly installments for a fixed and definite period. As applicable to the case at bar, the section provides that for the loss of a leg at or above the knee where the stump remains sufficient to permit the use of an artificial limb the compensation shall be $12 per week for a period of 150 weeks.

The Attorney General, appearing for the defendant, ingeniously contends that, inasmuch as the latter part of the section contemplates that the total sum of $4,500 may be paid in some cases while the maximum allowed for the loss of a member, as in the case of an arm at or near the shoulder, is only $2,400, therefore it must have been contemplated by the Legislature that other compensation than that specified in the schedule might be allowed not exceeding the sum of

$4,500. Just why the amount "$4,500" was used is difficult to explain, in view of the other provisions of the law. The amount is not referable to any other provision of the statute relating to compensation. It is certainly not referable to any maximum appearing in the schedule, for, as contended by the Attorney General, the maximum therein stated is $2,400. It is not referable to the class of injuries covered by the first part of section 3138, for the maximum therein stated is $12 per week for a period of not exceeding six years, which, when calculated, is shown to be only $3,744. The same is true of section 3137. The maximum in that section for a period of six years is exactly the same as the maximum under the first part of section 3138; or $3,744. Section 3137, however, is also inconsistent with itself, for while it limits the payments to $12 per week for a period of not exceeding six years, which produces the sum of $3,744, as above stated, yet the section says in no case shall the compensation exceed $4,500. The sum of $4,500 is manifestly irreconcilable with the other provisions of the statute relating to the subject. The discrepancy is difficult to explain, except on the theory that incongruous statutes must have been inadvertently used by the draftsman in preparing the bill, and overlooked by the Legislature when the law was enacted. We confess that this is an extreme view to take in construing a statute. It is our duty to reconcile apparent inconsistencies when possible so as to give effect to every provision of the statute. When this is impossible it then becomes our duty to ascertain the meaning of the Legislature by the application of other means not inconsistent with the legislative intent.

The particular provision of the statute with which we are immediately concerned, as we have shown, reads:

"In the case of the following injuries the compensation shall be 55 per cent. of the average weekly wages, but not more than $12 to be paid weekly for the period stated against such injuries, to wit: * * *

"One leg at or above the knee where stump remains sufficient to permit the use of an artificial limb. * * *"

We are constrained to hold that the language last quoted

is mandatory in both form and substance, that it definitely fixes the compensation to be paid for the loss of specific members of the body, and that the compensation thus fixed is exclusive of any other compensation for disability arising solely from the loss of the particular member in question. If there should be other members injured in the same accident, or other injuries resulting, causing disability, that would present an entirely different question, and one which we will not undertake to determine in the case at bar.

2

The facts in the present case are singularly free from complication. It does not appear that there was any injury or disability whatever resulting from the accident except the loss of the leg. No other member of the body was affected, and the temporary total disability for which the applicant was awarded additional compensation resulted entirely from the loss of the leg, and continued until he was supplied with an artificial limb. By no process of reasoning can we arrive at any other conclusion than that the total disability for which the applicant was awarded additional compensation was attributable to the loss of the limb. If this be true, it seems to us the additional compensation was not justified by anything contained in the statute.

Most of the authorities relied on by defendant deal with cases in which other injuries were received in addition to the loss of a member. In such cases it may be that compensation should be allowed for such total disability as is attributable to such injuries. That question, however, is reserved until a proper case is presented for its determination.

Plaintiff's attorney calls our attention to the fact that since this accident occurred, section 3138 as above quoted has been amended so as to allow compensation for temporary total disability in addition to compensation for loss of a member. The amendment follows the word ''respectively'' in the second line from the bottom of the page as the same appears in Comp. Laws Utah 1917, § 3138, and reads as follows:

*"And shall be in addition to the compensation hereinbefore pro-vided for temporary total disability, to wit.  *  *  *"* Sess. Laws, 1919, § 3138, p. 161.   (Italics ours.)

Plaintiff insists that this amendment authorizes the defendant to allow compensation for temporary total disability in a case of this kind, a power which it did not possess before. We find it difficult to avoid the logic of this contention. To say that the amendment made in 1919, after an experience of two years' administration of the law, adds nothing to the meaning of the statute as it was enacted in 1917, which we have heretofore quoted, is venturing further than the court is willing to go. In our opinion it is more consistent with the legislative intent to assume that the Legislature in 1919 arrived at the conclusion that in cases of this kind compensation should be allowed for temporary total disability in addition to the compensation for the loss of a member, and so made the amendment referred to, and thus supplied an omission which would not have been made by the Legislature of 1917 if it had had the same experience.

In view of the conclusion at which we have arrived, it would seem a useless task to review the authorities presented by counsel representing the respective parties. These will no doubt be cited by the reporter in his report of the case. It is sufficient to say that none of the authorities cited on the part of the defendant are exactly in point, nor are they sufficiently analogous to furnish reasonable grounds for arriving at a different conclusion. As before suggested, the authorities relied on by defendant, in nearly every instance, allowed additional compensation only in cases where there were other injuries in addition to the loss of a single member. The authorities cited by plaintiff generally support the conclusion which the court feels bound to adopt.

The defendant was not authorized to allow compensation for temporary total disability in addition to compensation for the loss of the leg.

It is therefore ordered that the award as made be set aside, and the defendant is directed to proceed in accordance with the views herein expressed.

CORFMAN, C. J., and FRICK, WEBER, and GIDEON, JJ., concur.