## MARSH v. ALJOE, ET AL.
(No. 1607; Jan. 28, 1930; 284 Pac. 261)

For the appellant there was a brief by *W. O. Wilson,* Attorney General, *J. A. Greenwood,* Deputy Attorney General, and *R. J. Jackson,* Assistant Attorney General, all of Cheyenne, Wyoming.

222

For the respondent there was a brief by *I. G. McCann,* of Casper, Wyoming.

BLUME, Chief Justice.

On January 28, 1929, Catherine E. Marsh, as guardian of Charles W. Marsh, filed a report of accident, as well as an application for claim, in the District Court of Natrona County, alleging that Charles W. Marsh was an

employee of one Sam Aljoe as an automobile mechanic in the general repair of automobiles, and that on April 25, 1928, such employee, after repairing the motor of an automobile, was thrown out of the car while driving it in order to test the motor, landing on his head, and fracturing his skull, as a result of which he sustained permanent total disability and became mentally incompetent. Sam Aljoe filed a report thereafter, denying that Marsh was an employee, and alleged the fact that he, the claimant, was working on his own account, receiving a percentage of the income—later shown to have been 66 2-3 per cent. The case was tried to a jury, which returned a verdict finding the issue in favor of the plaintiff, that he was permanently and totally disabled, and that he was temporarily totally disabled from April 25, 1928 to the 16th day of May, 1929. On May 24, 1929, the court entered orders for temporary total disability and permanent total disability in accordance with the finding of the jury. On June 3, 1929, the State Treasurer, within the time allowed by law, filed an application in the case asking that it be reopened, alleging the following grounds therefor: First, that the allowance was excessive; second, that there was no evidence showing the relationship of employer and employee between Sam Aljoe and Charles W. Marsh; third, that the court was without jurisdiction to make any allowance, for the reason that the application for an award was not filed within the time required by law; fourth, "that there is existing evidence which was not given in the original hearing material to the determination of an award of compensation, which evidence, if presented, would show that at the time of the injury from which claimant complains and upon which an allowance of the awards of compensation were based, the claimant was at the time of the injury upon which such awards were based, at least 50% disabled under the classification of disability established by the Workmen's Compensation

Act for the purpose of determining the right to compensation, which disability resulted from a former accident while in the employ of the Chicago, Burlington and Quincy Railroad.'' An affidavit was thereafter filed by R. W. Haines, claim agent of the C. B. & Q. Railroad, stating that C. W. Marsh was injured on March 25, 1921, while in the employ of such railroad company; that shortly after receiving the injury he filed suit against the company, claiming that he had been totally and permanently disabled; that a settlement of the suit was thereafter made under which the company paid him the sum of $12,500 for 50% total and permanent disability. Counter affidavits were filed on behalf of the claimant, tending to show that at the time of the accident on April 25, 1928, the claimant was in good physical condition. On July 18, 1929, the court denied the application of the State Treasurer, finding it to be without merit and that it failed to show that error was made in the amount of the award, the character thereof, or the grounds on which it was allowed. From this order denying the application to reopen the case, the State Treasurer has appealed.

■ The Attorney General, appearing, as required by law, for the State Treasurer, contends that the case should have been reopened because of the allegation in his application that new evidence existed which would show that the claimant, at the time of the alleged injury, was permanently disabled to the extent of 50%, the claimant having received compensation from the C. B. & Q. Railroad Company. Section 4334, W. C. S. 1920, subdivision B, recognizes the principle that former permanent disability should be considered in determining the allowance for a later disability, by providing:

''Where there has been a previous disability, as the loss of one eye, or the sight thereof, one hand, one foot, or any other previous permanent disability, the percentage of disability from a subsequent injury shall be determined

by deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury.''

We are not called upon at this time to determine the full meaning of this provision or the application thereof, since counsel for the claimant admits that if claimant was in fact disabled to the extent alleged, the compensation allowed should be reduced proportionately. But he contends that the court found that there was no probable cause for reopening the case, and that this finding is fully justified not only by the evidence introduced at the time of the trial, but also by affidavits filed after the application to reopen the case was made, showing that the claimant was in good condition immediately prior to the accident here in question.

The finding of the court was doubtless based, as claimed, upon the testimony and the affidavits so introduced and filed. The State Treasurer was not a party to the original proceeding and it would hardly be fair to hold that such testimony should have a binding effect upon him. And the main question, accordingly, to be determined is whether or not the legislature contemplated that the application of the State Treasurer, when it is based upon new evidence, should be determined upon ex parte affidavits. The legislature, by Section 7 of Ch. 111 of the Session Laws of 1927, provided:

''The State Treasurer shall have the right to cause any case to be reopened in which an order of award has been made, provided he shall cause a petition for the reopening of the case to be filed with the court which granted the award, within thirty days after the date on which the order of award was received in the State Treasurer's office. Such petition must show probable cause that error was made in the amount of the award or the character of the award or the grounds on which the award was made, and may specify as a reason for reopening the case exist-

ing evidence not given in the original hearing, showing the general nature and effect of such evidence. On the filing of such petition and on the court finding that probable cause is shown thereby, the court shall stay the award, and upon reasonable notice to all parties reopen the case and set the same for hearing *de novo.*"

The act further provides that the Attorney General shall appear and act for and on behalf of the State Treasurer. This statute—the like of which we have not found to exist in any other commonwealth—must be construed in the light of the situation which was sought to be remedied thereby. The state, as such, takes care of the fund from which workmen's compensation is paid, has contributed to it, and has from time to time taken pains to see that it has been maintained. While interested in having the general policy of the Workmen's Compensation Law carried into effect and its beneficial purposes applied, the duty or burden has also developed upon it to see that there is money on hand with which to pay those actually entitled to the benefits under the act, and that the fund is not exhausted as against such persons by others not properly within the intent and purpose thereof. But prior to 1927, the legislature had provided no direct remedy by which the officers of the state might lend their protective hand for such purpose or by which the amount contributed by the state to such fund might be safeguarded by them. Hence, it gave the State Treasurer, through the Attorney General, the "right", upon showing probable cause, to have any case reopened for the purpose of retrial. While directing that the court should find probable ground for reopening, it is specified at the same time that if new evidence is the ground therefor, it shall only be necessary for the Attorney General to show the general nature and effect thereof. We must, accordingly, construe the meaning of the provision as to the existence of probable cause in the light of the fact that

the reopening of the case by the State Treasurer is designated as a "right"; that the law contemplates a "retrial" of the case when a proper showing is made; that it is silent as to the determination of the truth of new evidence by ex parte affidavits and that it makes no requirement of the State Treasurer to show, when he filed his application, that the new evidence is true. Thus construing the law, we think it means that the court shall determine whether or not the new evidence will have, if true, a material bearing in the case; if so, that then it becomes its duty to reopen the case and let the truth be determined in a regular hearing. If this interpretation be not given to the act in question, the right granted to the State Treasurer would generally be of little, if any, value. By reason of the distance, ordinarily, from the place of trial, the Attorney General would in nearly every case be at a disadvantage in procuring affidavits or counter-affidavits within proper time. But what is more important is the opportunity to produce his witnesses in open court and to cross-examine the witnesses of the claimant, so that the truth may be fully tested, and to give the State Treasurer merely the right to have a question of fact determined upon ex parte affidavits or to deny him the opportunity above mentioned would mean that he is given but the shadow of a right. We think that the legislature contemplated that he should be given the advantage of a regular trial, the same as is given other parties in the case, and meant to make his right thereto, within the limits mentioned in the law, as broad as the right of the employer and employee, so as to give the state full measure of protection. The materiality and importance of the new evidence alleged to exist in the case at bar is not denied, since, if the workman was in fact disabled to the extent of 50% at the time stated, that condition would at least be presumed to continue to the time of the injury for which he was allowed compensation in this case.

Whether, when compensation for permanent impairment has been paid, there should be, in view of the policy of the law, more than a presumption, we need not determine. We think, accordingly, that the trial court should have reopened the case.

■ The court made an order on May 24, 1929, allowing the claimant the sum of $635.81 for temporary total disability and on the same day allowed the sum of $4000 for permanent total disability. In other words, the court treated the disability of the claimant as temporary up to the time of making an allowance for the permanent total disability. This was contrary to the decision of this court in the case of Sakamoto v. Kemmerer Coal Co., 36 Wyo. 325, 255 Pac. 356, wherein it was held that the amount allowed for temporary total disability must be subtracted from the amount allowed for permanent total disability. Counsel for the claimant argues that our decision last mentioned was made inadvertently and that we ought to reverse our former decision and clarify the law on that point. The decision above mentioned was not made inadvertently. Counsel have not in any way pointed out wherein it was wrong, or why it ought to be reversed. We shall not attempt to anticipate what our decision would be in cases where there is only permanent partial disability or in cases of permanent total disability in conjunction with the loss of a limb, or a situation similar to that. It would seem clear that, generally speaking, the legislature did not intend double compensation. That appears from Section 4334, subdivision C, as amended, by which the legislature has enacted that in no case shall the total payments made for temporary total disability exceed in the aggregate the lump sum to be paid an injured workman for injuries causing permanent total disability, and which seems to contemplate that when the payments made for temporary total disability equal the amount allowed under the law for total permanent disability, all

payments shall cease. That intent is further manifested in subdivision B of the same section, which, as already stated, provides that allowance for previous disability must be taken into consideration in determining subsequent disability, and also in subdivision A of the same section, wherein it is provided that in making an allowance for disfigurement, awards for former disfigurements must be considered, and also in subdivision D (2), (3) and (4), under which payments already made are deducted in case of the death of the workman.

Courts are not agreed as to whether or not total temporary disability may be compensated in addition to permanent partial disability, some holding that a workman's temporary total disability is distinct from permanent partial disability, even though arising out of the same injury. Industrial Comm. v. Ocean Acc. & Guar. Corp., 67 Colo. 427, 180 Pac. 568. Others hold the contrary. Georgia Casualty Co. v. Jones, 156 Ga. 664, 119 S. E. 721, and cases cited; Spring Canon Coal Co. v. Industrial Comm., 57 Ut. 208, 193 Pac. 821; Spring Canon Coal Co. v. Industrial Comm., 60 Ut. 553, 210 Pac. 611; Moses v. National Union Coal Mining Co., 194 Ia. 819, 184 N. W. 746; Fame Armstrong Laundry Co. v. Brooks, 226 Ky. 22, 10 S. W. (2nd) 478; Snyder, Workmen's Compensation Law, Section 570. That is not the situation in this case. According to all the evidence, and according to the theory of the claimant, his disability was permanent from the beginning, and the jury merely arbitrarily determined that temporary total disability ended at the time of the verdict. Not many cases have been found in which the courts have passed upon the specific point here involved. It appears in the case of Dolson v. East Butte Copper Mining Co., 78 Mont. 579, 254 Pac. 880, 887, that the statute of Montana allows compensation for temporary total disability for not exceeding three hundred weeks, and compensation for permanent total disability for not exceeding four hundred

weeks, at a certain rate and at another rate thereafter. The court, speaking of the allowance to be made for permanent total disability, says:

"If the total disability proves not temporary but permanent, payment is governed by Section 2913. It was in fact a permanent condition, not a temporary one. There is no concurrent condition here, nor any double payment over the same period. The compensation is paid during the period of disability—the period of total disability—which shall not exceed four hundred weeks, and after that at the rate of $5.00 per week."

In the case of Baffi v. Lehigh Valley Coal Co., 87 Pa. Super Ct. 579, the court held that when compensation was paid for permanent total disability no other allowance could be made in addition thereto, and the court said in part:

"When this claimant was paid the maximum amount for total disability, that ended the matter. He could not get anything more from any cause arising out of the same accident. He cannot be more than totally disabled, and when the fact appears that total disability has been compensated for, he cannot tag on another disability."

See also, Cramer v. Sargent & Co., 93 Conn. 26, 104 Atl. 490.

It is apparent that if both compensations made in this case could be made in every case in which a permanent total disability appears, it would be an inducement for the claimant to have the compensation for permanent total disability delayed as long as possible, so as to be able to draw the sum of $50 per month during the time of temporary total disability. The one that would be able to delay the matter the longest would be able to get the most, and workmen situated alike would not be treated alike under the law. We do not think that the legislature contemplated any such situation. We think, accordingly, that the double allowance was error.

232

In view of the fact that the testimony on the other points raised herein may be different on another trial; it is not necessary to decide them. We may, however, add that the question as to whether or not the claimant was in fact an employee within the contemplation of the Workmen's Compensation Law may be of such far-reaching importance that it should not be determined except after full presentation thereof, fortified by all the available authority thereon, and such presentation has not been made by either side herein. The order appealed from is accordingly reversed with direction to reopen the case in accordance with the application of the State Treasurer and for further proceedings not inconsistent herewith.

*Reversed, with Directions.*

KIMBALL and RINER, JJ., concur.