## SIMPSON-FELL OIL CO. et al. v. TUCKER et al.

No. 23378. Opinion Filed June 21, 1932.

Owen & Looney, Paul N. Lindsey, and J. Fred Swanson, for petitioners.

Robert D. Crowe, Asst. Atty. Gen., and Murphy & Colley, for respondents.

CULLISON, J. This is an original proceeding before this court to review an award of the State Industrial Commission made and entered January 25, 1932, in favor of Will Tucker.

The record shows that on December 19, 1926, the claimant, Will Tucker, while in the employ of the Simpson-Fell Oil Company, working at a hazardous employment, was struck by a beam hanger which fractured claimant's head.

Claimant was paid compensation for temporary total disability up to and including July 9, 1927. By order of the Commission, August 3, 1928, it was found that claimant's disability ended July 9, 1927, and the case was closed. No appeal was taken from that order and the same became final.

On November 17, 1931, claimant filed a motion to reopen the case and award further compensation on the ground of a change in condition, alleging that he is now totally and permanently disabled, due to the accident.

After three hearings had been held on this motion, the State Industrial Commission entered its order of January 25, 1932, in which it was found that since the closing of the case on the records of the Commission, claimant has had a change in his condition, and that he is now suffering a permanent partial disability as a direct result of the aforementioned injury. Said order further found and held that claimant has had no wage-earning capacity since November 19, 1931, the date of filing his motion to reopen the case, and awarded claimant "further compensation computed from November 17, 1931, to December 30, 1931, and to continue compensation thereafter at the rate of $16.92 per week, for a period not to exceed 300 weeks, and said cause to be subject to reconsideration of the degree of impairment by the Commission on its own motion or upon application of any party at interest."

It is from this order and award that the petitioners bring the case here for review. It is first contended that "The Commission erred in awarding the claimant compensation for 300 weeks (permanent partial disability) without giving the petitioner credit for the amount of compensation previously paid as temporary total disability."

We observe that the Commission found that the period of claimant's temporary total disability, resulting from his fractured head, had ceased; and because of a change in his condition, a period of permanent partial disability had followed. The Commission awarded claimant compensation for his permanent partial disability under the last paragraph of section 7290, C. O. S. 1921, as amended by chapter 61, sec. 6, Session Laws 1923, commonly referred to as the "other cases" clause, and which is hereinafter quoted.

The portion of the Workmen's Compensation Act pertinent to the case at bar is as follows:

"Section 7290: Schedule of Compensation—Extent of Disability:

"The following schedule of compensation is hereby established: * * *

"2. Temporary Total Disability: In case of temporary total disability, sixty-six and two-thirds per centum of the average weekly wages shall be paid to the employee during the continuance thereof, but not in excess of 300 weeks, except as otherwise provided in this act.

"3. Permanent Partial Disability: In case of disability partial in character but permanent in quality, the compensation shall be sixty-six and two-thirds per centum of the average weekly wages, and shall be paid to the employee for the period named in the schedule as follows:

"Thumb: For the loss of a thumb, 60 weeks.

"First Finger: * * *

"Other Cases: In this class of disabil-

ities the compensation shall be sixty-six and two-thirds per centum of the difference between his average weekly wages and his wage-earning capacity thereafter in the same employment or otherwise payable during the continuance of such partial disability; not to exceed 300 weeks, but subject to reconsideration of the degree of such impairment by the Commission on its own motion or upon the application of any party in interest. * * *"

Petitioners contend in their brief that:

"Since the statute provides for an award for temporary total disability, based upon loss of earning capacity, and an award for permanent partial disability based upon loss of earning capacity, we submit that they cover the same ground and the respondent, when he has paid temporary total compensation, should be given credit on an award for permanent partial disability, which is also based upon loss of earning capacity."

As far as we have been able to find, this question has not been passed upon by this court.

The contention of petitioners that the award for the differing degrees of compensation amounts to double compensation is not well taken. Section 2790, supra, begins with the sentence "The following schedule of compensation is hereby established," and in subdivision 2 thereof specifically provides for compensation for temporary total disability, followed by the provision in subdivision 3 for compensation for permanent partial disability. Said subdivision 3 provides such compensation, not only in cases of specific injuries, such as the loss of a thumb, finger, etc., but for injuries not specifically enumerated and which are grouped in a residuary clause, known as "Other Cases," supra, each grouping being mutually exclusive of the other.

It is a closed question in this court that under section 7290, C. O. S. 1921, as amended, by chapter 61, sec. 6, Session Laws 1923, the State Industrial Commission may make an award for temporary total disability, as a specific injury, notwithstanding that the same may subsequently become a permanent partial disability for which compensation may be awarded. Smith & McDannald v. State Industrial Commission, 133 Okla. 77, 271 P. 143; Thompson v. State Industrial Commission, 138 Okla. 166, 280 P. 598; Dillon v. Spanhanks, 139 Okla. 32, 280 P. 1101; Hazelton Coal Co. v. State Industrial Commission, 141 Okla. 142, 284 P. 303; Berger v. Ahuero, 142 Okla. 232, 286 P. 338; H. E. Turner Drilling Co. v. Pendley, 142 Okla. 290, 286 P. 886; United Engineers & Com-

structors, Inc., v. Curtiss, 143 Okla. 3, 286 P. 889; M. T. Smith & Sons Drilling Co. v. Breed, 146 Okla. 135, 294 P. 137; Loffland Bros. Co. v. State Industrial Commission, 148 Okla. 190, 298 P. 259; Eagle-Picher Lead Co. v. Powell, 149 Okla. 1, 299 P. 142; and Barnsdall Refining Co. v. Ramsdall, 149 Okla. 99, 299 P. 499.

We observe that in these cases cited, this court has uniformly held that an award made a claimant for his temporary total disability may not be substracted from a later award made claimant by reason of said temporary total disability being followed by a permanent partial disability of a specific nature as enumerated in subdivision 3 of section 7290, supra.

The question becomes one of whether or not the same rule may be applied to the claimant's award for permanent partial disability in "Other Cases," such as are not included among those specifically enumerated and provided for in the first portion of subdivision 3, supra. We think it can. If this were not true, and the contention of petitioners was controlling as to the construction of that part of our Workmen's Compensation Law, it would work irreparable injury and harm to those the Industrial Law was intended to protect. For illustration, if the claimant has been paid approximately six months' compensation for temporary total disability, by reason of a fractured head, and upon a change in condition was awarded permanent partial disability under "Other Cases," payable during the continuance of such partial disability, not to exceed 300 weeks, but subject to reconsideration of the degree of such impairment by the Commission on its own motion, or upon the application of any party in interest, and if the claimant completely recovered in five months from the time of the last award and the Commission so found, the theory of petitioners would be that claimant, though disabled for eleven months, would be entitled to but five months' compensation.

We are of the opinion, and hold: That the clear intent of the law is that claimant is entitled to the amount of the prior award for his temporary total disability in addition to any sums ordered paid him as permanent partial disability under the residuary clause in subdivision 3 of section 7290, supra, the total not to exceed 500 weeks.

Petitioners next contend "that there is no evidence to support the finding that claimant has had no earning capacity, due to the injury, since November 17, 1931."

The record discloses the following testimony with reference to claimant's inability to do manual labor on November 17, 1931, and thereafter. Claimant, after describing a hurting in his head that he says was caused by the injury, testifies that he is unable to work, as follows:

"Q. Are you able to work at this time? A. No. Q. And it is due to the hurting in your head? A. Yes, I suffer with that hurting all the time."

Dr. H. W. Yeats testified that it was his opinion that claimant could not do ordinary manual labor, in these words:

"Q. Do you think at this time he has any permanent disability? A. Yes, I do. Q. What do you think his permanent disability is, Doctor? A. Well, that would be a little hard to determine definitely and absolutely, but I don't consider him as in any physical condition, you might say, to do anything heavy—heavy work of any description. I think he is practically totally disabled. Q. Do you think there is any medical or surgical aid that could be rendered him that would cure him, or alleviate the condition he is suffering from? A. I don't believe there is. It is my opinion that there is not. Q. Do you think, Doctor, that this man could do ordinary manual labor? A. No, I don't. Q. And it is your opinion that the condition he is in now is due to the accident which he sustained on December 19, 1926, where this nail penetrated his skull? A. That's the only thing that I could attribute it to—from the history of the case."

Dr. R. E. Sawyer testified that the claimant was 100 per cent. disabled as follows:

"Q. Do you think at this time that the claimant is suffering from any permanent disability? A. I do. Q. Do you think there is any medical or surgical treatment that could relieve that? A. I don't. Q. Do you think his condition will improve? A. I don't. Q. What per cent., in your opinion, taking into consideration his history and your examination, and you—what you knew about the man before and after the accident, what per cent. of disability would you say he has? A. I think his general disability—it would be hard to say, or estimate, in just performing ordinary work, necessary to the maintenance of life and accepting a position with contract work, and things like that, he is disabled 100 per cent."

Dr. G. O. Hall made his report on November 17, 1931, after an examination, finding that the claimant was totally and permanently disabled, and said report was made a part of the evidence as Dr. Hall's testimony in the case.

We are of the opinion, and hold: That the foregoing testimony constitutes competent evidence reasonably tending to support the finding challenged, and, under the well-settled rule of law in this state, the award of the Commission based thereon will not be disturbed by this court.

Petitioners contend, lastly, that: "There is no evidence to support the finding of a change in condition."

In the hearing of this cause, the Commission had before it the following testimony: The claimant was asked the question, "What is your condition now, compared to what it was in August—on August 30, 1928?" to which he answered "Oh, lots worse—a whole lot worse. I suffer so much more than I did."

Dr Sawyer testified:

"Q. Doctor, how long have you known Will Tucker? A. I could not say positively. Something like 12 or 15 years, probably. Q. I will ask you if you have been his family physician during a period of time? A. Well, practically all of that time. * * * Q. (By the Court): I believe you testified that you examined the claimant before a hearing in this case in 1928, and observed him since, and examined him on yesterday? A. Yes—yesterday afternoon. Q. Doctor, in your opinion, is the claimant's condition worse now than it was before? A. Yes, sir. Q. It is your opinion he will gradually get worse? A. It is. Q. And that he has a nervous mental condition at this time? A. Yes, sir."

It is obvious from the above competent testimony that the same reasonably tends to support said finding by the State Industrial Commission, and its award based thereon.

The award of the Commission is affirmed.

RILEY, HEFNER, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. LESTER, C. J., and CLARK, V. C. J., absent.