IN RE McCONNELL
McCONNELL v. MURPHY BROS., ET AL.
(No. 1797; Jan. 24, 1933; 18 Pac. (2d) 629)

For the appellant there was a brief by *J. A. Greenwood,* Attorney General, *Richard J. Jackson,* Deputy Attorney General, *George W. Ferguson,* Assistant Attorney General and *R. Dwight Wallace,* Assistant Attorney General, all of Cheyenne, Wyoming, and oral argument by *Mr. Wallace.*

For the respondent there was a brief and also oral argument by *Fred W. Layman,* of Casper, Wyoming.

RINER, Justice.

On April 23, 1931, the District Court of Natrona County made an order of award in favor of Henry McConnell, hereinafter generally referred to as the employee, under the Workmen's Compensation Laws of this state. Rev. St. 1931, Sec. 124-101 et seq. The order, in brief, recited that McConnell had two minor children dependent upon him; that he had suffered an injury on February 9, 1931, in the course of his employment whereby his left leg below the knee was fractured; that he was entitled to disability compensation, the monthly amount prescribed by law being stated and that the disability still continued. Subsequent follow-up orders continued the monthly payments. Neither these nor the original award appear to have been questioned.

On May 31, 1932, the court made another order of award reciting in effect that the employee had received compensation payments for temporary total disability since February 9, 1931—the sum of such payments being $817.32; that he had suffered in consequence of the injury aforesaid a 40 per cent. "permanent total disability" of the left leg below the knee and that, accordingly, for this he was awarded the further sum of $600 to be paid by the Industrial Accident fund. The word "total" appears to have been inadvertently used for the word "partial" in the last clause above.

In due time, the State Treasurer filed his petition to reopen the case, asserting that the District Court was without jurisdiction to make an award for any sum whatsoever as permanent total disability, and that the aggregate allowance to the employee for temporary total disability was in excess of the full amount authorized by statute to be paid to him for his injury. On August 9, 1932, the matter of this petition was heard and an order was entered by the court declining to grant the prayer thereof. The Treasurer has brought the record here for review by direct appeal from the order last mentioned.

Appellant in his brief reiterates the contentions set out in his petition as detailed above and asserts that the court should have deducted from the amount found to be due the employee as permanent partial disability, the sums received as temporary total disability awards. Whether this criticism of the order of award made May 31, as aforesaid, is correct appears to be the sole controverted question submitted for decision.

It is to be noted that no attack is here made upon the orders awarding temporary total disability in this case. So far, too, as the authority of the court to enter an order awarding compensation for permanent partial disability is concerned, there can hardly be any serious doubt, for the statute expressly confers upon the court the right to make such an order. Wyo. Rev. St. 1931, § 124-120, subdivision (a). As remarked above, the problem to be disposed of is whether the order as made is correct.

We approach its solution with the principle in mind that statutes of the character under consideration should be interpreted with reasonable liberality, that the benefits they were intended to secure may be accomplished. This view was intimated in Sakamoto v. Kemmerer Coal Co., 36 Wyo. 325, 255 Pac. 356, through quotation from appellate state courts of high authority. And the court of last resort of the nation, relative to the same matter, has recently said:

"Such laws operate to relieve persons suffering such misfortunes of a part of the burden and to distribute it to the industries and mediately to those served by them. They are deemed to be in the public interest and should be construed liberally in furtherance of the purpose for which they were enacted and, if possible, so as to avoid incongruous or harsh results."

Baltimore & Philadelphia Steamboat Co. v. Norton, 284 U. S. 408, 52 S. Ct. 187, 76 L. Ed. 366.

It is conceded by counsel for the parties that the point for decision has never been directly determined here. How-

ever, we are reminded of the case of Sakamoto v. Kemmerer Coal Co., supra, where it was held that a payment to a workman of an award for temporary total disability should be deducted from a subsequent amount awarded for total permanent disability, and Marsh v. Aljoe, 41 Wyo. 220, 284 Pac. 260, 263, where that rule was re-affirmed. In the case last cited, this court remarked on the disagreement in the decisions of appellate courts concerning the question "whether or not total temporary disability may be compensated in addition to permanent partial disability, some holding that a workman's temporary total disability is distinct from permanent partial disability, even though arising out of the same injury." Appellant seeks to bring the instant case within this rule of deduction announced in these two prior decisions of this court. We are asked to consider a number of cases from other jurisdictions which, it is said, "support the contention that payments for temporary total disability should not be made or if made, should be deducted where the injury falls under a schedule of stated payments for specific injuries and allows for their payment as permanent partial disability."

Other than as indicating the views of lawmaking bodies and courts as to whether an award for temporary total disability may be followed by an additional award for permanent partial disability, all growing out of the same injury, is a wise and proper policy, the decisions from other jurisdictions are not generally helpful in construing the statutory phraseology now before us. This is so because the laws there involved vary materially in the language used from those portions of the statutes of this state with which we are at present concerned. Neither are the courts in other states of the Union agreed in the interpretation of statutory provisions which have to do with this matter and which are apparently quite similar in terms.

For example, in Georgia Casualty Co. v. Jones, 156 Ga. 664, 119 S. E. 721, it appeared that the law (Laws 1920, p. 167) made provision for certain payments to be made an

injured workman in case of his total incapacity for work resulting from the injury and also, in another section, directed that compensation be awarded for injuries resulting from the loss of named members or organs of the human body. These payments were required to be made for listed periods and were based on fixed proportions of the average wages of the workman—a very common provision in statutes of this character. This section (Section 32) giving the schedule of the payments for loss of members of the body contained the clause: "The compensation so paid for such injury shall be as specified therein and shall be in lieu of all other compensation." This so called "in lieu" clause was held to control and to forbid any compensation for total incapacity. The ruling was followed in subsequent cases in that jurisdiction. McNair v. Home Accident Insurance Co., 38 Ga. App. 345, 143 S. E. 237; American Mutual Liability Insurance Co. v. Braden, 43 Ga. App. 74, 157 S. E. 904.

The same interpretation of this "in lieu" clause seems to have been adopted also by the Kansas City Court of Appeals of Missouri, not all the judges sitting, in Reay v. Elmira Coal Co., 225 Mo. App. 102, 34 S. W. (2d) 1015, 1017. To the contention on the part of the claimant that this view would result "in the gravest injustice to the employee" and to "incongruities of the worst kind," that court responded: "However, if the act works in any way unscientifically, absurdly, or unjustly, that is for the legislature to correct."

In Marhoffer v. Marhoffer, 220 N. Y. 543, 116 N. E. 379, by a four to three division of the court of appeals, the claimant was allowed compensation for permanent partial disability resulting from injuries to fingers, but the appellate division of the Supreme Court in the latter's award for temporary total disability flowing therefrom was reversed. The New York compensation act appears also to contain the "in lieu" clause.

The Iowa compensation statute has been construed to accomplish the same result as in the Georgia cases. See Moses

v. National Union Coal Mining Co., 194 Ia. 819, 184 N. W. 746. The Utah act concerning workmen's compensation, prior to amendment, was similarly interpreted in Spring Canyon Coal Co. v. Industrial Commission, 57 Utah 208, 193 Pac. 821. After the accident occurred, the law was amended so as to allow compensation in that state for temporary total disability in addition to compensation for loss of a member, and this situation was stressed by the Utah court in reaching its conclusion. It may, however, be observed that the matter dealt with in the case last cited came again before the Supreme Court of Utah in Spring Canyon Coal Co. v. Industrial Commission, 60 Utah 553, 210 Pac. 611, and it was then held that where, under the law providing that for the loss of a leg at or above the knee, where a stump remained sufficient to permit the use of an artificial limb, compensation of $12 a week for 150 weeks might be allowed, an additional compensation for temporary total disability could also be allowed after the 150 week period, where complications resulted.

In Kramer v. Sargent and Co., 93 Conn. 26, 104 Atl. 490, the "in lieu" clause in that act was given the construction as in the Georgia cases. But the lawmaking body of the state thereafter declined to allow this interpretation to stand with the result that, in Costello v. Seamless Rubber Co., 99 Conn. 545, 122 Atl. 79, 80, the court, adopting an opposite view from that taken in the Kramer case, used this language:

"It has already been stated that the Kramer and Franko Cases (93 Conn. 13, 104 A. 485) were decided prior to the amendment of 1919, which added to Section 5352 the words 'in addition to the usual compensation for total incapacity.' This addition, so far as it affects the prior construction of the section, provides a more liberal measure of compensation because it obliterates the distinction theretofore drawn between total incapacity preceding and following the loss, and thereby reverses the ruling in the Kramer case."

Upon somewhat similar statutory provisions, the courts of Kentucky have agreed with the conclusion of the Georgia courts. Wirth-Lang Co. v. Meece, 211 Ky. 520, 277 S. W. 834. However, in the same jurisdiction, in a later case it was held that where the injury to an employee was embraced in the class of "all other cases of permanent partial disability" not specifically named in the state compensation act and such employee received pay according to a percentage of permanent partial disability, he might also receive compensation for temporary total disability, inasmuch as the "in lieu" clause aforesaid applied only to injuries specifically named. Mills v. Mills and Connelly, 214 Ky. 675, 283 S. W. 1010, 1012.

But in Smith and McDonald v. State Industrial Commission, 133 Okla. 77, 271 Pac. 142, under a compensation act also containing the "in lieu" clause aforesaid and the usual provision for payment for injuries resulting in temporary total disability, it was held that an award might be made for temporary total disability as a specific injury although that condition might subsequently become a permanent partial disability for which compensation might also be awarded. This view has been consistently followed in that jurisdiction by many subsequent decisions as listed in Simpson Fell Oil Co. v. Tucker, 158 Okla. 45, 12 Pac. (2d) 529.

So, in Crawford v. Virginia Iron, Coal & Coke Co., 136 Va. 266, 118 S. E. 229, 230, the court said that the "in lieu" clause "merely puts an end to the right to any other compensation" than that provided by the specified section of the law "for the loss of any member mentioned therein, and thereafter changes the basis of the compensation from that of indemnity for disability to work, upon which theory the previous compensation aforesaid is based, to that of indemnity for loss of the member or physical impairment as such." It was accordingly held that claimant was "entitled to temporary total disability compensation, as provided in Section 30 of the act, up to the time of the opera-

tion whereby he lost a part of his finger, and, after that time, to the compensation provided by Section 32 and paragraph (f) thereof, for such loss.'' To the same effect, is the case of Gobble v. Clinch Valley Lumber Co., 141 Va. 303, 127 S. E. 175.

Likewise, in Jack v. Knoxville Fertilizer Co., 154 Tenn. 292, 289 S. W. 500, the court, following the earlier case of Cherokee Sand Co. v. Green, 152 Tenn. 412, 277 S. W. 905, held that the compensation act of the state authorized an allowance for temporary total disability flowing from an injury to an employee's foot, which involved its partial loss, for the period such disability existed, notwithstanding permanent partial disability also resulted for which payment should be made. Concerning the ''in lieu'' clause, the court said:

· ''The provisions relied on by the defendant, quoted from subsection C. of Section 28 of the Act (Pub. Acts 1919, c. 123), 'But in such cases the compensation in and by said schedule provided shall be in lieu of all other compensation,' we do not understand to provide against an allowance for temporary total disability suffered by one whose permanent loss is covered by the schedule. Such a construction would do violence to the spirit of the act as a whole, and often defeat its purpose. Compensation for loss by accident of the ability to earn, resulting in dependency, is the keynote in this legislation.''

In the following cases from the several jurisdictions noted, an award for temporary total disability, followed by one for permanent partial disability in connection with the same injury, has been held proper: Massachusetts Bonding etc. Co. v. Industrial Accident Commission, 176 Cal. 488, 168 Pac. 1050; Hines v. Industrial Accident Commission, —— Cal. ——, 8 Pac. (2d) 1021; Poast v. Omaha etc. Co., 107 Neb. 516, 186 N. W. 540; Texas Employers' Insurance Ass'n v. Moreno, 115 Tex. 621, 277 S. W. (Com. App.) 84; Commercial Casualty Insurance Co. v. Strawn, 44 S. W. (2d) (Tex. Civ. App.) 805; Bywog v. Latex Community

Oil Co., Inc., 3 La. App. 699; Zeller v. Mesker, 85 Ind. App. 659, 155 N. E. 520; Dosen v. East Butte Copper Mining Co., 78 Mont. 579, 254 Pac. 880; Coca-Cola Bottling Works v. Lilly, 154 Md. 239, 140 Atl. 215; Rice v. Denny Roll and Panel Co., 199 N. C. 154, 154 S. E. 69; Resner v. Wilbert etc. Coal Co., 132 Kan. 806, 297 Pac. 429; Phillips Case, 123 Me. 501, 124 Atl. 211; Industrial Commission of Colorado v. Ocean etc. Guarantee Corp., 67 Colo. 427, 180 Pac. 568; Hafer Washed Coal Co. v. Industrial Commission, 295 Ill. 578, 129 N. E. 521; Addison v. W. E. Wood Co., 207 Mich. 319, 174 N. W. 149; Curtis v. Hayes Wheel Co., 211 Mich. 260, 178 N. W. 675; Stammers v. Banner Coal Co., 214 Mich. 215, 183 N. W. 21.

In Baltimore & Philadelphia Steamboat Co. v. Norton, 40 Fed. (2d) 530, 531, the United States District Court for the Eastern District of Pennsylvania, held, construing the Long Shoremen's and Harbor Workers' Compensation Act (33 U. S. C. A., §§ 901-950), that a long shoreman who has sustained injuries resulting in a temporary total disability and also permanent partial disability, was entitled to compensation for both as long as, within the act's limitations, these respective disabilities continued. This holding was subsequently affirmed by the United States Court of Appeals for the Third Circuit. 48 F. (2d) 57.

Previously, in the case of Texas Employers' Insurance Ass'n v. Sheppeard, 32 Fed. (2d) 300, the United States District Court for the Southern District of Texas, interpreting the same act, had held that the employee might claim either temporary total or permanent partial compensation, but could not claim both for an injury to his arm.

Thereafter, the Supreme Court of the United States granted certiorari to review the judgment of the court of appeals in the Norton case. About the time that case was argued in the court of last resort, the case of Bethlehem Shipbuilding Corporation, Ltd. v. Monahan, decided by the United States Court of Appeals for the First Circuit, 54 Fed. (2d) 349, held, as in the Sheppeard case, reversing

the United States District Court for the District of Massachusetts. With a slight modification in the amount allowed, the judgment of the court of appeals in the Norton case was affirmed. In the opinion on the final review of that decision filed January 11, 1932, the Supreme Court very plainly disapproved of the ruling in the Sheppeard case, saying:

"Petitioners' construction would produce incongruous results in many cases. Indeed, a decision cited by them, Texas Employers' Ins. Ass'n v. Sheppeard, (D. C.) 32 F. (2d) 300, concretely illustrates such a result. On that basis, whenever the temporary total disability of an arm continued during the full time allowed for healing and the subsequent permanent partial loss of its use was not more than 10 per cent., the injured employee would receive less than if he had suffered only the temporary total disability. Thus petitioners' construction would deny any allowance for the permanent injury.".

Baltimore & Philadelphia Steamboat Co. v. Norton, 284 U. S. 408, 52 S. Ct. 187, 188, 76 L. Ed. 366.

Under these authorities and others which have received our attention, we conclude that, as a matter of sound policy, the lawmaking bodies in the statutes enacted and the courts in their construction thereof, have very generally favored making an award for temporary total disability, and when that disability has terminated, if a permanent partial disability has resulted from the injury, then the allowance of an additional award for that. This view certainly harmonizes with the canon of construction to be applied to acts of this character hereinbefore set forth.

Can the provisions of the Wyoming Compensation Act be so interpreted without doing violence to its terms? We are inclined to answer this question in the affirmative. So far as pertinent here, the statutory clauses appear to be contained in Sec. 124-120, subdivision (c), Wyo. Rev. St. 1931, and they there read:

" 'Temporary total disability' means an injury which, though it may result or does result in a permanent total or partial disability, temporarily incapacitates the injured person from performing any work at any gainful occupation for the time, but from which injury such person may recover by medical or surgical treatment and be able to resume work. In such case, if the workman be unmarried at the time of the injury, he shall receive the sum of fifty dollars ($50.00) per month, so long as the total disability shall continue. If he have a wife with whom he is living at the time of the injury, he shall receive sixty dollars ($60.00) per month, and if he have boys under sixteen (16) years of age or girls under eighteen (18) years of age, or both he shall receive for each seven and one-half dollars ($7.50) per month, but the total monthly payments shall not exceed ninety dollars ($90.00) per month. No compensation, except the expense of medical attention, shall be allowed for the first seven (7) days of disability, unless the incapacity extends beyond the period of twenty-one (21) days, in which case the compensation shall run from the time of the injury. As soon as recovery is so complete that the earning power of the workman at any kind of work is restored, the payments shall cease, but in no case shall the total payments made in such cases exceed in the aggregate the lump sum amount herein specified to be paid an injured workman for injuries causing permanent total disability."

And, also, in subdivision (a) of that section, where this language is employed:

" 'Permanent partial disability' means the loss of either one foot, one leg, one hand, one arm, one eye, or the sight of one eye, one or more fingers, one or more toes, and dislocation where the ligaments are severed, or any other injury known to surgery to be permanent partial disability. For any permanent partial disability hereinafter specificially described, resulting from an injury, the workman shall receive a lump sum as follows:"

The statute then gives a list of lump sum awards for specifically enumerated losses of various members of the body, after which it declares:

"For any other injury known to surgery to be permanent partial disability, the workman shall receive a sum in the amount proportional to the extent of such permanent partial disability based as near as may be upon the foregoing schedule."

It will be observed that we have no "in lieu" clause before us to be interpreted in the light of the divergent views of the courts concerning such language as mentioned above. On the contrary, the statute definitely provides for compensation not only for permanent partial disability, but also a fixed monthly rate for temporary total disability, "though"—as the law says—"it way result or does result in a permanent total or partial disability." The language last quoted obviously indicates that the legislature had in mind the well known physical fact that, in the case of many injuries, a workman is totally incapacitated to perform labor during the healing period following the accident and that after nature, nursing, medical, and surgical, science have all done their best, there will still remain a permanent total or partial disability. The limiting clause on all the compensation thus provided is the declaration that, "but in no case shall the total payments made in such cases exceed in the aggregate the lump sum amount herein specified to be paid an injured workman for injuries causing permanent total disability." In the event temporary total disability is determined to have become permanent total disability, the language of the law last above quoted necessarily requires a deduction from the total sum of $4000 —the limit of award for permanent total disability (Wyo. Rev. St. 1931, § 124-120, sub-division (b))—any sums previously received by the employee on account of such temporary total disability in order to avoid double compensation. Sakamoto v. Kemmerer Coal Co., supra, and Marsh v. Aljoe, supra.

It is urged here that the award below for temporary total disability followed by an additional award for permanent partial disability on account of a proportionate

loss of the leg below the knee results in double compensation. We do not so read the statute. These awards are for different things. The total disability award is given by the law, as we read it, to recompense the employee for inability to work. The permanent partial disability award, however, has regard primarily to the loss or impairment of a body member or function. This loss or impairment may or it may not result in reduction of earning power. It does deprive the employee of something of great value to him and, hence, the legislature deemed it proper that the industry should make compensation therefor. Another view which attains the same result is expressed in the following language taken from the opinion of the United States District Court, in the Norton case, supra:

"It is true, of course, that a permanent partial disability began when the injury was sustained, and hence runs through the whole compensation period, and in this view it is logical to say that a claim for permanent partial disability is a claim for the whole compensation time from the receipt of the injury. This, however, is not strictly accurate, or at least there is as much truth in saying that during the healing period there was no partial disability, but a total disability, and that the partial disability did not begin until the total disability was ended. * * * The truth is that there are two injuries sustained when expressed in terms of disability—one a temporary total disability and the other a permanent partial disability, and on the principle that the greater includes the less and, indeed, by the very terms partial and total the partial disability does not exist as long as the total disability lasts. A healing period is a total disability period."

In Industrial Commission of Colorado v. Ocean etc. Guarantee Corporation, supra, the court, speaking of the sections in the Colorado act relative to temporary total and permanent partial disability, remarked that "they provide for different things." So, also, in Western Steel Erecting Co. v. Lukenbill, 143 Okla. 92, 287 Pac. 724, 725,

where the employee received an award for temporary total disability and also additional permanent partial disability compensation to the extent of 75 per cent. of the permanent loss of a foot, the court said:

"The contention of petitioners that the award for both injuries amounts to double compensation is not well taken. Our statute specifically provides for compensation for temporary total disability. It also provides for compensation for partial permanent disability. Temporary total disability means the healing time, or that period of time that claimant, or the employee, by reason of the injury, is unable to perform any kind of labor and is totally disabled —that class of disability from which one could reasonably expect a recovery.

"If no recovery could be had, the claimant would be entitled to an award for permanent total disability. Permanent partial disability is that class of injury which is permanent, as in the case at bar. The claimant below, the respondent here, lost practically all of the left foot by reason of the accident. This loss was permanent. It will go with him through life and affect the use of the foot."

The position urged by appellant has already led to difficulty in the instant case. As heretofore indicated, no question was made that the employee was fairly and legally entitled to the awards for temporary total disability, the amount paid therefor being $817.32. There seems to be no question made either, that so far as the fact is concerned, the court properly determined that the employee finally had a 40 per cent. permanent partial disability of the left leg below the knee which called for an award of $600. Under this situation, the contention advanced by appellant is thus stated, "the maximum amount to which the injured workman was entitled under the statute was $600.00, * * * Of course, in the instant case, appellant does not go so far as to contemplate any action for the recovery of any money from the injured workman herein, but contends that the total of the temporary payments

should be deducted from the amount of the permanent award so that this workman would be precluded from collecting the additional $600.00.'' This means, therefore, that a portion of the awards made for temporary total disability should be used to cancel the award for permanent partial disability and, although the employee is only entitled to receive a maximum of $600 for the consequences of his injury, the employee will nevertheless, not be asked to account for the balance. This will not do. If the employee has money improperly paid him from the Industrial Accident Fund, unquestionably it should be recovered. But we do not think he has so received the money payments, as already intimated.

Some other equally strange results would flow if appellant's contentions should be upheld. Suppose, in the instant case, the compensation paid the employee for temporary total disability had amounted to just $600. In that event, he would be sent forth to live the balance of his life with an admitted permanent partial disability of 40 per cent. in his left leg below the knee, for which he would receive not one cent's compensation although the statute in terms declares he shall have it. Again, two men enter the hospital, each suffering an injury of the character here involved. Each receives temporary total disability awards to the extent of $600. At the end of that time, through the aid of medical science and his peculiarly strong constitution, one leaves the hospital entirely recovered. The other, notwithstanding everything possible by nursing, medicine, and surgery, is done, cannot be made whole. He leaves the institution with a 40 per cent. disability of the leg below the knee. Appellant would have them both receive the same amount. If the temporary total disability period for the two men in the case last supposed had continued as in the matter at bar, the employee so unfortunate as not to recover would come out of the hospital not only permanently partially disabled, for which condition he

would receive no compensation, but he would actually owe the Industrial Accident Fund more than $200. We cannot believe that the legislature intended to produce consequences of this incongruous nature.

It may possibly be that, under certain circumstances, undesirable results may flow from the construction given the act by the trial court and which we now are inclined to approve. If so, they have not been pointed out by appellant. It is suggested that intentional delay by the workman in obtaining the permanent partial disability award may produce inequality in the awards made to employees similarly situated as to their injuries. That is a matter involving a proper administration of the law by those in charge of it. It does not seem to be claimed that, if the duties imposed by the law are properly performed by those charged with their execution, any such untoward result will be attained. We conclude, therefore, that the order of award of the District Court of Natrona County should be affirmed.

*Affirmed.*

KIMBALL, C. J., and BLUME, J., concur.